### BAKER v. BAKER.
### No. 11219.

Court of Civil Appeals of Texas.
San Antonio.
Feb. 10, 1943.

Rehearing Denied March 24, 1943.

W. O. Gross, of Mineral Wells, Croom & Croom, of Houston, and Johnson & Rogers and Nat L. Hardy, all of San Antonio, for appellant.

Rawlings, Sayers & Scurlock and Cantey, Hanger, McMahon, McKnight & Johnson, all of Fort Worth, and Eskridge & Groce, of San Antonio, for appellee.

SMITH, Chief Justice.

This action was brought by Miss Myla Baker against Earl M. Baker to recover two-thirds of the common stock of the Gunter Hotel Corporation, owner of the Gunter Hotel in the City of San Antonio. Miss Baker recovered as prayed for and Earl M. Baker has appealed.

Appellee, now seventy years of age, and her brother T. B. Baker entered the hotel business as partners more than forty years ago and in time amassed large interests in hotel and other properties, including real estate in Texas.

Earl Baker, now fifty years old, is a nephew of Myla and T. B. Baker, and helped them in their business activities from the days of his youth, taking an increasingly active and responsible part in their affairs until the year 1930, when their business difficulties and their inability to carry on as they had been, induced appellee and T. B. Baker to convey all their partnership assets to Earl, in the hope and upon his promise that he would salvage their properties and put them upon a paying basis. Accordingly, in 1930, and in furtherance of this plan, the properties were duly conveyed to Earl Baker, who thereafter assumed control of and operated the entire estate, with apparent substantial success. In the meantime, for reasons obscure and immaterial now, T. B. Baker seems to have faded out of the picture and was no longer directly interested, appellee having succeeded to his interest, with his concurrence.

In the summer of 1938 the parties began to discuss the matter of an accounting from Earl to Myla Baker, looking to a settlement between them of their respective rights in and to the assets of the estate and accretions thereto. By late in November of that year the parties appear to have reached a tentative agreement of settlement of their respective claims upon the estate, and appellee's attorney, Sam R. Sayers, Esq., of Fort Worth, prepared a form of a master contract designed to cover a complete and final settlement, including a division of the Gunter Hotel stock. Appellee signed this agreement, and all the parties then met in Fort Worth to close the matter and execute all papers necessary to that end. But when

the proposed master agreement was presented to Earl Baker he refused to execute it, upon the objection that it included a stipulation that appellee was to have two-thirds of the common stock of the Gunter Hotel Corporation. At that time that stock was held by and in the name of Earl Baker and two other co-trustees for the benefit of a creditor of the corporation, whose property, the Gunter Hotel, was heavily encumbered. Earl Baker's refusal to execute the proposed master agreement, because of the inclusion of the stipulation that appellee should have two-thirds of the Gunter stock, terminated that attempt to settle the estate, and Earl Baker returned to his home in San Antonio. Sayers then renewed his efforts to effect a settlement and after a few days obtained Earl Baker's consent, by telephone, to execute the proposed master agreement. All the parties and their respective attorneys then reconvened in Fort Worth, on December 8, 1938, for the purpose of consummating the settlement as then tentatively agreed upon. But upon renewal of negotiations Earl Baker again and finally refused to execute any written agreement to divide the Gunter stock with appellee, but orally agreed to procure the stock for her within the next sixty to ninety days; he was not in a position to procure and deliver the stock to Myla because of the then status of the title to it. With that understanding the parties then proceeded with the settlement and executed some fifteen or sixteen instruments in consummation thereof.

The parties seem to have come into the final and full agreement of settlement on December 9th, as evidenced by a master contract bearing that date, in lieu of the master agreement prepared by Sayers. That instrument and all the others executed in performance of its stipulations were finally executed and exchanged on December 11th, although all but the master agreement, which was dated December 9th, were dated December 10th, and all were purportedly executed and acknowledged on that date. By consent of the parties no provision was included in the master agreement concerning the Gunter Hotel stock.

In the so-called master agreement it was provided that, whereas, each of the respective parties "was the owner of certain properties" thereinafter decribed, and

"Whereas, the parties hereto have placed an equal value on their respective properties and desire to exchange said properties hereinafter described on a basis of an equal value and regard said exchange as mutually advantageous:

"Now, therefore, we, Earl M. Baker and Gladys Whorton Baker, party of the first part, and Myla Baker, party of the second part, for and in consideration of the mutual promises and agreements herein to be performed by the respective parties, as well as other good and sufficient consideration, do enter into the following contract of exchange of property:"

It was then recited that Earl Baker agrees to convey and deliver to appellee on or before December 19, 1938, all or specified parts of certain properties, consisting of large holdings in real estate in various counties in Texas, an undivided one-half of the mineral interest in a tract of forty acres of land in Aransas County, and all the grantor's interest in "WFAA" radio stock. And in turn it was stipulated that appellee transfer to Earl Baker and wife "The Crystal Plant," a certain city block, and 8,100 shares of common stock in Resort Hotel Company, all situated in Mineral Wells, Texas. Apparently the Resort Hotel Corporation owned the Baker Hotel in Mineral Wells, and this conveyance was to complete Earl Baker's ownership of all the common stock of that corporation.

The parties then, on December 11, 1938, proceeded to execute the master agreement, dated December 9th, as well as the several conveyances therein provided for, which were dated December 10th, so that every obligation imposed in the master agreement upon the respective parties was thereby fully discharged. But, in addition to the conditions of settlement provided in the master agreement and as a part of the same transaction, appellant executed and performed the following obligations to appellee: (1) Appellant executed a secured trust agreement providing for the payment of $9,000 a year to appellee during the remainder of her life; (2) executed a grant and assignment with warranty to appellee of the right to exclusive use during the remainder of her life of a certain apartment in the Baker Hotel, together with her meals, laundry, maid service and all the services and facilities usually furnished to guests of modern hotels, all without cost to appellee; (3) appellant executed a transfer of and then and there delivered to appellee the common stock of Citizens Hotel Corporation. owners of the Texas

Hotel in Fort Worth; (4) appellant executed an assignment and transfer to appellee of a one-third interest in a promissory note of a third party for $8,000. These four obligations of appellant to ·appellee were not included in the master agreement and therefore rested in parol until reduced to writing and delivered along with all the other written instruments provided for in the master agreement and executed in pursuance thereof, whereby a complete settlement of the reciprocal obligations of the parties was fully consummated. Nothing further remained to be performed by either party, except appellant's continuing obligation to pay the $9,000 annuity to appellee. That executory obligation was preserved by specific exception from the mutual release now to be noticed.

Now, contemporaneously with the execution of the several writings provided for in the master agreement and those embracing the contemporaneous parol agreements, whereby the settlement was consummated, the parties executed and placed with those writings their mutual release, as follows:

"State of Texas }
"County of Tarrant }

"Whereas, on the 9th day of December, 1938, a contract was entered into by and between Earl M. Baker and Gladys Whorton Baker, as first party, and Myla Baker, as second party, for the purpose of exchanging certain properties therein mentioned and executing conveyances thereto, respectively; and,

"Whereas, it is contemplated by all of the parties hereto that when the terms of said contract are complied with that it shall constitute a full, final, and complete release, each to the other, respectively, from all claims, demands, choses in action, suit, or other right of action of every character and description, whether enumerated herein or not, save and except the rights and benefits accruing to Myla Baker under a certain trust agreement executed by Earl M. Baker, December 10, 1938.

· "Now, therefore, in consideration of the foregoing premises, and the respective rights and benefits passing to each of said parties, respectively, under the terms of said contract, we enter into the following release agreement:

"I.  I, Myla Baker, do hereby release Earl M. Baker and Gladys Whorton Baker from any and all claims, demands, choses in action, or other right of action, of every character and description, past, present, and future, real or fancied, whether the same be enumerated herein or not, growing out of any trade, deal, joint adventure, partnership, or other character of dealing, business or otherwise (except as to my rights to the properties mentioned in said contract and my right as beneficiary under said trust agreement), and by these presents do acknowledge full, final, and complete settlement and payment in full thereof, and that I have no right, title, interest, or claim to any property, personal or real, now in the name of Earl M. Baker and/or Gladys Whorton Baker.

"This release and acquittance, however, . is not intended to nor shall it in any manner nor to any extent impair or nullify or release the said Earl M. Baker from his liability to me ·nor my right in and under a certain trust agreement dated the 10th day of December, 1938, to which such trust agreement especial reference is here made, nor shall this release and acquittance in any manner impair the obligation of Earl M. and Gladys Whorton Baker to me in the contract hereinabove referred to. * * *" This was followed by an identical release from appellant to appellee.

■ All the written instruments, including the blanket release, were executed and acknowledged on December 11th by the respective parties while assembled, together with ·their respective attorneys and the notary, in the Fort Worth offices of Sam R. Sayers, Esq., attorney for appellee. After execution and acknowledgment by the parties all the instruments of conveyance to appellee, including duplicate of the release, were delivered into the possession of her attorney, and the conveyances to appellant, together with duplicate release, were delivered to one of his attorneys, Franklin P. .Canaday. Now, appellee contends that this admitted manual delivery of all the papers was made subject to a contemporaneous parol agreement that the transaction would not be complete and the release was not to be recorded or take effect until appellant performed his prior parol promise to deliver two-thirds of the Gunter Hotel stock to appellee; that the delivery was conditioned upon that performance. The evidence relied upon by appellee in support of her contention of conditional delivery of the release consisted of the testimony of appellee, her attorney Sayers and the notary, to the com-

posite effect that after the instruments were put in the possession of the attorneys, appellee's attorney stated, in the presence of all the parties and without objection from any and with the expressed concurrence of Canaday, one of appellant's attorneys, that "this transaction" or "deal" is and will not be "completed" or "finished," and "these papers" will be "kept until the final settlement" and will not be "final" or "placed of record," until Earl Baker shall have "sent" or "delivered" two-thirds of the Gunter Hotel stock to Myla Baker. Appellant's attorney, Canaday, died before the trial of the case and therefore did not testify, but appellant, his wife and his other attorney, Croom, also present on the occasion in question, each flatly and categorically denied the testimony of appellee and her witnesses. Nevertheless, the latter testimony must be given effect here for what it may be worth in support of the judgment of the trial court. The jury resolved that testimony into a finding that "on the occasion of the signing of the instruments on December 11, 1938, it was agreed by and between Myla Baker's attorney and Earl M. Baker's attorney that the *release* signed by Myla Baker would not become effective until the stock in the Gunter Hotel Corporation was delivered to the plaintiff." (Emphasis ours.)

After delivery, in the manner stated, of the executed instruments Earl Baker and his attorneys returned to San Antonio, where Earl resumed negotiations to perfect his title to the encumbered Gunter stock, which he acquired a few weeks later. He was then for the first time in a position, if so minded, to transfer and deliver all or any part of that stock to appellee. The latter soon learned that appellant was in a position to deliver the stock, and through her attorney began pressing him to do so. Appellant at first definitely refused and although at times thereafter he orally promised to deliver the stock or "satisfy" appellee in some way, he steadfastly and consistently declined to put the promise in writing, and finally, after two years or more, appellee brought this suit to enforce her claim.

The specific remedy relied on by appellee in this Court is difficult to determine from the presentation. She prayed in the court below that she recover of appellant two-thirds of the Gunter Hotel stock; that the release admittedly executed by her be can-

celled and held of no effect, and that appellant be required to account to her for revenues derived from the Gunter Hotel subsequent to December 10, 1938; or, in the alternative, for damages in the amount of the value of the stock and the revenues derived therefrom. In limine appellee abandoned, or the trial court denied, the remedies of cancellation of the release and for damages, and rendered judgment, simply and only, that appellee recover of appellant two-thirds of the Gunter stock as prayed for, subject to an outstanding encumbrance, and that appellant execute and deliver to appellee the necessary evidence of title thereto.

The judgment was rendered upon four jury findings, that (1) on December 10, 1938, appellant orally agreed to "subsequently" deliver two-thirds of the Gunter stock to appellee; (2) appellant did not at the time "in good faith intend to perform such agreement"; (3) "in signing the instruments which she signed on December 11, 1938" appellee "was induced to do so by the agreement" of appellant; (4) "on the occasion of signing the instruments on December 11, 1938, it was agreed by" the attorneys for appellant and appellee, respectively, "that the release signed by Myla Baker would not become effective until the" Gunter stock was delivered to her. It is obvious that issues 1, 2, and 3, above, were submitted by the trial court upon the theory that appellee was fraudulently deceived into executing, not the blanket release only, but all the written instruments admittedly executed on December 10th or December 11th, which, if true and not thereafter waived, would have entitled her to cancellation and rescission of the contract of settlement. By denying those remedies, however, the trial court refused to give effect to those findings, and appellee does not complain of that action which becomes binding upon her, nor could she so complain in the face of the record. Moreover, as will hereinafter appear, appellee by her conduct waived the alleged fraud and affirmed and ratified the settlement and all the elements thereof.

Appellee contends, and the jury found, that the release without reference to the various other instruments executed at the same time was delivered to the parties upon a contemporaneous parol agreement that it was not to take effect until

appellant delivered two-thirds of the Gunter Hotel stock to appellee. That premise and the jury finding have no support in the record. It cannot be denied that the execution and delivery of all the instruments constituted one single complete and indivisible act. All of appellee's evidence (denied in toto by appellant's witnesses) was to the effect that when those instruments, including the release, were delivered into the actual possession of the respective grantees, appellee's attorney stated, not that the release alone, but that "these papers"—obviously referring to all the instruments without distinction—were not to take effect or be recorded until the Gunter stock was delivered to appellee; that "this deal," "this transaction," was not "finished," or "completed" until the happening of that contingency. The effect of this testimony was that the asserted condition related no less to the entire agreement of settlement, and to all the instruments executed in consummation thereof, than to the release. By no stretch of construction nor analysis of the evidence could the proposed condition be applied to the release alone; it applied to all, or none. If, therefore, there was an effective condition and such condition was not met or waived by the parties, then there was no agreement or settlement, the entire "deal" or "transaction" came to naught, and all the instruments executed in consummation thereof nullified.

■ But, assuming a conditional delivery of all or any of the several instruments, we think the record conclusively shows as a matter of law that by her subsequent conduct appellee waived performance of the alleged condition and ratified and confirmed complete delivery of all the instruments, including the release, and she cannot now be heard to question the sufficiency of that delivery or the all encompassing effect of the release. For, the record shows without dispute that upon the admitted manual delivery of those instruments appellee proceeded without delay and continued thenceforth to take the several properties and rights conveyed to her by those instruments, together with all the benefits accruing to her thereunder. From the day of the settlement and throughout this litigation she accepted and appropriated to her own uses the monthly installments of the $9,000 annuity awarded to her under the trust agreement executed and delivered by appellant, as a part of the settlement, along with all the other instruments. She has all the while, without cost, used and continues to use the apartment in the Baker Hotel and all the stipulated appurtenances thereto accorded her under the grant from appellant, which was executed and delivered to her along with all the other instruments as a part of the settlement then consummated; the value of this right does not appear to have been established in the record except by inference, although appellant estimates it, apparently not unreasonably, at $600 or $700 per month. Also, appellee has collected and appropriated to her own uses $6,000 per year in oil and gas rentals from lands conveyed to her by appellant in the settlement, and $2,000 per year grazing rentals on other lands so conveyed to her by appellant, and, moreover, appellee has sold certain radio stock conveyed to her by appellant in the settlement, at the price of $35,500 in cash, which she collected and appropriated to her own uses. These benefits, unconditionally accepted and appropriated by appellee solely by virtue of the settlement with appellant, beginning with the consummation of that settlement and extending through the trial of this case three years later, amounted in value by that time to more than $100,000. All these benefits were accepted and retained by appellee in the face of appellant's refusal to deliver the Gunter Hotel stock to her. If the delivery of the papers evidencing the settlement, or of any of them, was not complete, then there was no settlement and appellee could not rightfully collect and appropriate those benefits or any part of them; if that delivery was complete, then she took those benefits rightfully. She could accept and thereafter retain them only by waiving her claim of conditional delivery and affirming the present force and effectiveness of the contract which alone could give her the right and possession and use. 17 Tex.Jur. p. 135, § 7. The release in question was a necessary constituent of one integrated and indivisible transaction evidenced by all the sixteen instruments executed on December 10, 1938, and neither party may repudiate one or more while appropriating the benefits of all or any of the others. This is particularly true of the release, which by express recitals therein was linked with the master agreement and made dependent upon the execution and delivery of the

several conveyances and agreements provided for in the master agreement, as well as upon the continued performance by appellant of his executory contract to pay appellee an annuity of $9,000.

█ At the time the release was executed and delivered every act required of both parties in the master agreement had been done and every obligation imposed therein had been completely discharged. The contemporaneous parol obligation of appellant to transfer and deliver the Citizens Hotel stock to appellee was discharged by actual transfer and delivery on the spot; appellant's oral obligation to assign to appellee an interest in the $8,000 promissory note was likewise discharged by execution and delivery to her of that assignment; appellee's contemporaneous parol obligation to transfer and deliver to appellant certain shares of the common stock of Resort Hotel Corporation was discharged by such transfer and delivery at that time; appellant's collateral obligation to grant to appellee the right to the free use of an apartment and appropriate facilities in the Baker Hotel was fully discharged by the execution and delivery of that grant in the form of a written irrevocable and secured trust agreement. In all those respects the obligations of the respective parties as fixed in the master agreement and in the other contemporaneous written agreements and performed parol agreements constituted a fully executed and complete contract of settlement, except the collateral written agreement of appellant to pay appellee the $9,000 annuity, which agreement was executory and was to continue throughout the life of appellee, but was included in appellee's release, with a reservation of her right to exact continued performance thereof by appellant according to its terms. By that reservation there was excepted from the operation of the release an obligation which was to be performed in the future, and by that exception, to say nothing of the affirmative all-encompassing scope of the release as a whole, the existence of any other obligation to be performed in the future was conclusively negatived, under the familiar and uniformly enforced doctrine of expressio unius est exclusio alterius. Therefore, both expressly and by necessary implication, the release operated upon appellee's parol claim against appellant for the Gunter Hotel stock, as well as upon all other claims not expressly excepted from the release.

██ Another and equally familiar doctrine deemed applicable here is the socalled parol evidence rule which prohibits the alteration of written contracts by parol evidence. Appellee's entire case adds up to a contention that the blanket release was not to operate upon her claim against appellant for two-thirds of the Gunter Hotel stock. It is obvious that the release, complete and all-inclusive, by express terms couched in perfectly plain and wholly unambiguous language, included every conceivable claim which appellee might assert against appellant, with the specific exception of appellant's executory obligation to pay appellee an annuity of $9,000, which exception had the added effect, by necessary implication, of excluding all others, as has been stated. That release still stands, unimpaired, fortified by the refusal of the trial court to cancel it, and supported by every appropriate rule of law. Having been admittedly executed in connection with and as a part of the one transaction in which the parties settled their differences growing out of the ownership and operation of the Baker properties, the written release was binding alike upon the respective parties and cannot be modified by engrafting upon it a parol exception in contravention of its express terms. The integrity of written contracts cannot be impaired or destroyed by such means. If the parties honestly intended to establish appellee's asserted claim and secure its performance in the future they did not adopt the legal means of effectuating that object.

█ Appellee attempts to avoid the effect of the foregoing rules by contending that "in the settlement" the parties stepped aside from the written elements thereof and made an additional agreement in parol concerning the Gunter Hotel stock, and that that contemporaneous parol agreement is independent of those expressed in writing and must be given effect without regard to those writings. But this device is obviously futile, for to give it effect would be to flaunt the parol evidence rule on the one hand and disregard the plain terms of the blanket release on the other.

The judgment is reversed and judgment will be here rendered that appellee take nothing.