kidwell v. black

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-01-393-CV

KEITH KIDWELL APPELLANT

V.

GEORGE C. BLACK, JR. d/b/a APPELLEE

DALLAS MORTGAGE COMPANY

------------

FROM THE 67
TH
 DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

I.  INTRODUCTION

This case involves the reformation of a series of deeds and related instruments that contain an incorrect legal description of a parcel of property.  Appellee George C. Black d/b/a Dallas Mortgage Company (“Black”) sued Appellant Keith Kidwell and Lincoln Financial, Inc. (“Lincoln”), K. Wayne Fontenot, Edna Faye Williamson, and Wallace Simpson, seeking reformation of various deeds, deeds of trusts, and assignments.  A Rule 11 Agreement was executed that resulted in the trial court signing a partial judgment in which it found that Black had a valid lien against the property as to Williamson and that Lincoln did not own any interest in the property at any time after October 10, 1990.  Kidwell was not a party to the agreement.

Kidwell and Black proceeded to a bench trial, after which the trial court signed a judgment that ordered the reformation of all the necessary documents in favor of Black.  Kidwell appeals from the trial court’s judgment.  We affirm.

II.  FACTUAL SUMMARY

The property at issue is correctly described as “Lot 14, Block 2, PASADENA HEIGHTS, an Addition to the City of Fort Worth, Tarrant County, Texas, according to the plat, recorded in Volume 310, page 4, Deed Records of Tarrant County, Texas.”  The dispute arose out of an incorrect legal description of the property that was carried forward through several transfers. The facts regarding the transfer of the property were undisputed at trial: 

On July 18, 1988, Lincoln purchased “Lot 14, 
Block 2
" receiving a Trustee’s Deed.  [Emphasis added.]

On October 10, 1990, Lincoln transferred the property via Special Warranty Deed to Fontenot.  The property was incorrectly described as “Lot 14, 
Block 7
.”  [Emphasis added.]

Also on October 10, 1990, Fontenot executed a Special Warranty Deed to Williamson, retaining a vendor’s lien.  Once again, the property was incorrectly described as “Lot 14, 
Block 7
.” [Emphasis added.]

On October 17, 1990, Williamson executed a Deed of Trust for the benefit of Fontenot, and the property was incorrectly described as “Lot 14, 
Block 7
.”  [Emphasis added.]

On July 1, 1992, Fontenot transferred his lien to First Approach Financial via a Transfer of Lien.  The property was correctly described as “Lot 14, 
Block 2
.”  [Emphasis added.]

On October 28, 1993, First Approach Financial transferred the lien to Simpson.  The transfer documents correctly described the property as “
Block 2
.”  [Emphasis added.]

On April 25, 1995, Simpson transferred the lien to Black incorrectly describing the property as “Lot 14, 
Block 7
.”  [Emphasis added.] 

On June 1, 1999, Kidwell purchased a Sheriff’s Deed which purported to transfer “
Block 2, 
Lot 14” from Lincoln.  [Emphasis added.]

Upon learning of Lincoln’s foreclosure, but before buying the property, Kidwell researched the deed records and found that Lincoln was the record owner of the “Lot 14, Block 2" property.  Kidwell also found that the property taxes had been paid on the property.  There is no “Lot 14, Block 7" property in the Pasadena Heights addition.  Furthermore, either Williamson, her family, or her tenants have continuously occupied, maintained, and insured the Block 2 property since October 10, 1990.

III.  LEGAL ANALYSIS

Kidwell raises six points on appeal, arguing that (1) the trial court lacked jurisdiction to reform the deeds because the statute of limitations had expired; (2) Black lacked standing to file suit because he was not in privity with Kidwell; (3) the trial court could not reform the deeds without giving notice to the other interested defendants; (4) the trial court granted more relief than was requested in the pleadings; (5) the trial court did not properly follow the Texas recording statutes when it held Kidwell to a higher standard of notice than Black; and (6) Kidwell was an innocent bona fide purchaser for value. 

A.  Final Judgment

We address Kidwell’s third point first to determine this court’s jurisdiction to hear this appeal.
(footnote: 1)  Kidwell argues that the trial court’s judgment is not final because necessary parties to the suit were either not served with notice or not included in the trial court’s judgment.  Specifically, Kidwell argues that Fontenot and Simpson were necessary parties to the lawsuit who were sued but never served with process.  Therefore, Kidwell argues that because the judgment of the trial court does not include Fontenot and Simpson, the judgment is invalid and must be reversed.

As a general rule, an appeal may be taken only after a final judgment has been signed.
(footnote: 2)  “A judgment is final for purposes of appeal if it disposes of all pending parties and claims in the record.”
(footnote: 3)  However, when a named defendant is not served with process and does not file an answer, and when the plaintiff fails to exhibit any indication that he expects to obtain service over the defendant, the defendant is considered to have been nonsuited.
(footnote: 4)  Under such circumstances, the judgment is considered final and appealable.
(footnote: 5)  

Neither Fontenot nor Simpson was served with process, and neither filed an answer with the trial court.
(footnote: 6)  Black included Fontenot and Simpson in its first amended petition, but failed to include them in his motion for summary judgment or in any other pleading filed in the trial court.  The trial court even stated in its judgment that Fontenot and Simpson had not been served and were not before the trial court.  We hold that the trial court’s judgment was final and overrule Kidwell’s third point.

B.  Statute of Limitations

Kidwell argues in his first point that the trial court lacked jurisdiction to hear the case because Black’s reformation cause of action was barred by the statute of limitations.  Even though Kidwell incorrectly argues that his statute-of-limitations defense is jurisdictional,
(footnote: 7) we address his argument that the limitations had expired and that Black’s cause of action is time-barred.

Regarding the statute of limitations, when a mutual mistake is made as to the legal effect of a deed, the statute of limitations begins to run either when the mistake is discovered or when, in the exercise of reasonable diligence, the mistake should have been discovered.
(footnote: 8)  The question of when a mistake should have been discovered is a fact question.
(footnote: 9)
 If an appellant is attacking the legal sufficiency of an adverse answer to an issue on which he had the burden of proof, the appellant must overcome two hurdles.
(footnote: 10)  First, the record must be examined for evidence that supports the finding, while ignoring all evidence to the contrary.  Second, if there is no evidence to support the finding, then the entire record must be examined to see if the contrary proposition is established as a matter of law.
(footnote: 11)
 Kidwell contends that when the lien documents were transferred to Black on April 25, 1995, Black deliberately changed the property description in the documents to reflect “Block 7” instead of “Block 2.”  Therefore, according to Kidwell, Black had notice of the problems in the deeds when the deed of trust was transferred to him.  Kidwell’s references to the record do not, however, substantiate this allegation, and the record is void of any attempt by Black to correct or change the property description from “Block 2” to “Block 7” when he purchased the deed of trust.  

Kidwell also argues that because Black acquired a title insurance policy and because the title policy would have revealed the error in the deeds, Black had notice of the error in the description of the property.  Black testified, however, that he relied on the title policy to prepare the property description in the transfer documents.  He also testified that he was not aware of any problems with the title of the property until June 1, 1999.

The trial court found that Williamson is the owner of the property and that Black is the owner of a valid lien against the property.  The trial court did not address Kidwell’s statute-of-limitations defense in the judgment.  As a result, the trial court implicitly found that the statute of limitations had not run.  Ignoring all contrary evidence, we hold that Black’s testimony supports the trial court’s implicit finding.
(footnote: 12)  We overrule Kidwell’s first point.

C.  Standing

In his second point, Kidwell argues that Black lacked standing as a matter of law because there was no privity between Kidwell and Black.  A party’s standing to file a lawsuit requires a real controversy between the parties, and the resolution of that controversy is dependent upon the judgment sought from the trial court.
(footnote: 13)  

Black’s standing is based on his interest in the deed of trust, which is dependent upon the validity of Williamson’s interest in the property.
(footnote: 14)  In opposition to Black’s claim, Kidwell maintains that his interest in the property is valid.  Because of the obvious conflict, we hold that Black had standing to bring this suit and overrule Kidwell’s second point.

D.  Relief Granted

Kidwell argues in his fourth point that the trial court erred in granting Williamson relief because she did not file any pleadings with the trial court requesting the relief that was granted.

Kidwell correctly points out that nothing in the record indicates that Williamson requested any relief in the trial court.  Black alleged in his pleadings, however, that Lincoln did not own any interest in the property at any time after October 10, 1990; therefore, it had no interest in the property to transfer to Kidwell at the sheriff’s sale.  Black requested the trial court to reform the deeds to reflect the correct property description.  Black also requested a declaratory judgment that Williamson acquired title to the property by adverse possession. 

“The judgment of the court shall conform to the pleadings [and] the nature of the case proved . . . and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity.”
(footnote: 15)  The trial court’s judgment grants all the relief requested by Black.  

Because Black had standing to bring this suit due to the controversy existing between Black and Kidwell, we hold that the trial court’s judgment is supported by the pleadings.  We overrule Kidwell’s fourth point.

E.  Notice and Bona Fide Purchaser Status

Kidwell argues in his fifth point that there is no evidence to support the trial court’s finding that Kidwell had notice of the discrepancies in the property descriptions.  Specifically, Kidwell argues that the trial court improperly followed the Texas recording statute by holding Kidwell to a higher standard of notice than Black.
(footnote: 16)  Kidwell argues in his sixth point that the trial court incorrectly reformed the instruments to the detriment of Kidwell because Kidwell is an innocent bona fide purchaser for value.  Both of these arguments depend on Kidwell’s status as an innocent bona fide purchaser for value.  

Kidwell acquired his title via a sherriff’s deed.  The deed states that the Sherriff conveyed to Kidwell “all the estate, right, title and interest which . . . Lincoln . . . had [in the property] on the 9
th
 day of April A.D. 1999.”  The deed contains no covenant of warranty and only attempts to convey whatever interest Lincoln may have held.
(footnote: 17)  Thus, the deed is a quitclaim deed.
(footnote: 18)  

The purchaser of a quitclaim deed takes the deed “with notice of all defects in the title and equities of third persons.”
(footnote: 19)  Because Kidwell is the grantee of a quitclaim deed, he cannot be a bona fide purchaser.
(footnote: 20)  Therefore,  Kidwell had notice of the defects in the title as a matter of law.
(footnote: 21)  We overrule Kidwell’s fifth and sixth points.

IV.  CONCLUSION

Having overruled each of Kidwell’s six points, we affirm the trial court’s judgment.

LEE ANN DAUPHINOT

JUSTICE

PANEL B: DAUPHINOT, GARDNER, and WALKER, JJ. 

[DELIVERED MARCH 20, 2003]

FOOTNOTES
1:
See Rape v. M.O. Dental Lab
, No. 2-01-302-CV, slip op. at 4-5, 2003 WL 69534, at *2 (Tex. App.—Fort Worth Jan. 9, 2003, pet. filed) (addressing appellate court’s jurisdiction before reaching merits of case).

2:
Tex. Civ. Prac. & Rem. Code Ann.
 § 51.014 (Vernon Supp. 2003); 
Lehmann v. Har-Con Corp.
, 39 S.W.3d 191, 195 (Tex. 2001).

3:
Lehmann
, 39 S.W.3d at 195.

4:
Youngstown Sheet & Tube Co. v. Penn
, 363 S.W.2d 230, 232 (Tex. 1962); 
see also Rape
, slip op. at 5, 2003 WL 69534, at *2 (holding that under similar facts a summary judgment was final for purposes of appeal).

5:
Youngstown
, 363 S.W.2d at 232.

6:
See id.

7:
See In re Marriage of Collins
, 870 S.W.2d 682, 684 (Tex. App.—Amarillo 1994, writ denied) (describing section 16.004 as a general statute of limitations that is not jurisdictional).

8:
Brown v. Havard
, 593 S.W.2d 939, 944 (Tex. 1980).

9:
Id.

10:
Victoria Bank & Trust Co. v. Brady
, 811 S.W.2d 931, 940 (Tex. 1991). 

11:
Id.
; 
Sterner v. Marathon Oil Co.
, 767 S.W.2d 686, 690 (Tex. 1989).

12:
See Victoria Bank & Trust
, 811 S.W.2d at 940.

13:
Tex. Ass’n of Bus. v. Tex. Air Control Bd.
, 852 S.W.2d 440, 446 (Tex. 1993).

14:
See id.
 (explaining the general test for standing).

15:
Tex. R. Civ. P. 
301.

16:
Tex. Prop. Code Ann. 
§ 13.001 (Vernon Supp. 2003).

17:
See Woodward v. Ortiz
, 237 S.W.2d 286, 291 (Tex. 1951).

18:
See id.
; 
see also Diversified, Inc. v. Hall
, 23 S.W.3d 403, 407 (Tex. App.—Houston [1
st
 Dist.] 2000, pet. denied) (op. on reh’g).

19:
Woodward
, 237 S.W.2d at 291-92; 
see also Diversified
, 23 S.W.3d at 407.

20:
Diversified
, 23 S.W.3d at 407.

21:
See id.