

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-11-00424-CV

MICHAEL CADE AND BILLIE CADE        APPELLANTS AND APPELLES

V.

BARBARA D. COSGROVE,        APPELLEE AND APPELLANT
INDIVIDUALLY, AND AS THE
TRUSTEE OF THE CHARLES AND
BARBARA COSGROVE FAMILY
REVOCABLE LIVING TRUST

----------

FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

----------

## OPINION

----------

Appellants Michael Cade and Billie Cade appeal from the trial court's denial of their motion for summary judgment on their claims against Appellee Barbara Cosgrove, individually, and as trustee of the Charles and Barbara Cosgrove Family Revocable Living Trust, and the granting of Cosgrove's motion for summary judgment. Cosgrove appeals from the trial court's denial of her

motion for partial summary judgment for attorney's fees. The Cades conveyed property to a revocable trust created by Cosgrove and her husband, now deceased, under a deed that conveyed the mineral estate in contravention of the sales contract, and they sued Cosgrove when she refused to execute a correction deed. Because we hold that neither the Cades nor Cosgrove established a right to summary judgment, we reverse.

**Background Facts and Procedural History**

On September 21, 2006, the Cades and the Cosgroves executed a contract for the sale of the Cades' property in Arlington, Texas. The property was subject to an oil, gas, and mineral lease between the Cades and Dale Resources, LLC. The sales contract stated that the Cades were to retain all mineral rights. The warranty deed, however, failed to include the mineral reservation. The deed was signed by the Cades at closing on October 10, 2006, and was recorded on October 16, 2006.

After the sale, the Cades and the lessee under the mineral lease took acts consistent with an understanding that the Cades still owned the minerals. The Cades sent Chesapeake Energy a letter notifying the company of their address change on December 11, 2008.[1] Chesapeake sent the Cades two shut-in checks dated January 7, 2009 and January 21, 2010. On October 25, 2010,

---

[1]We assume in this appeal that Chesapeake had acquired the lease with Dale Resources.

Chesapeake mailed the Cades a letter informing them of their rights as royalty owners.

In December 2010, however, Michael called Chesapeake to ask about the status of the Cades' bank deposit forms for royalties, and he learned that the company had sent the royalty deposit forms to Cosgrove. In this conversation, Michael learned that there was a "problem" with the deed with respect to the mineral reservation. The Cades asked Cosgrove to execute a correction deed, but she refused.

The Cades filed this suit on February 24, 2011, asserting claims for a declaratory judgment that the Cades owned the minerals, breach of an agreement with the title company that the parties signed at closing, fee forfeiture,[2] tortious interference with contractual relationship, and civil theft. The Cades filed a motion for partial summary judgment, and Cosgrove filed a motion for summary judgment asserting limitations and the merger doctrine. Cosgrove asked the trial court to dismiss the Cades' claims "subject to Cosgrove's right to pursue attorney's fees."

The trial court signed an order granting Cosgrove's motion for summary judgment, denying the Cades' motion, and dismissing the Cades' claims. Cosgrove then filed a motion for partial summary judgment seeking attorney's fees under the Declaratory Judgment Act. The trial court signed a final judgment

---

[2]The Cades do not raise any argument on appeal regarding the summary judgment as to this claim.

3

denying Cosgrove's motion, stating that "it would be inequitable and unjust to award attorney's fees based on the facts in this lawsuit."  Both sides now appeal.

## Standard of Review

We review a summary judgment de novo.[3]  We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not.[4]  We indulge every reasonable inference and resolve any doubts in the nonmovant's favor.[5]  A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim.[6]  A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim.[7]

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties'

---

[3]*Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

[4]*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

[5]*20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

[6]*See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986).

[7]*Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c).

4

summary judgment evidence and determine all questions presented.[8]  The reviewing court should render the judgment that the trial court should have rendered.[9]

## Analysis

### 1. Cosgrove's Motion for Summary Judgment

In the Cades' first issue, they argue that the trial court erred by granting Cosgrove's motion for summary judgment.  Cosgrove moved for summary judgment on all of the Cades' claims.  Cosgrove's summary judgment motion asserted two grounds for judgment:  the merger doctrine and the statute of limitations.

### 1.1. Merger Doctrine

Cosgrove argued that the doctrine of merger prohibited the Cades from using the terms of the sales contract to contradict the terms of the deed. Generally, the terms of a sales contract are merged into the deed, and the deed is considered the final expression of the parties' agreement.[10]

---

[8]*Mann Frankfort*, 289 S.W.3d at 848; *see Myrad Props., Inc. v. Lasalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009).

[9]*Mann Frankfort*, 289 S.W.3d at 848.

[10]*Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex. 1979); *Munawar v. Cadle Co.*, 2 S.W.3d 12, 16–17 (Tex. App.—Corpus Christi 1999, pet. denied) (citation omitted).

A party may avoid the application of this doctrine, however, by alleging and proving a mistake in the execution of the deed.[11] The Cades asserted in their petition that the deed should be reformed because the deed's omission of their reservation of their mineral interest was a mutual mistake. A deed may be reformed on the ground of mutual mistake.[12] Unilateral mistake by one party, and knowledge of that mistake by the other party, is equivalent to mutual mistake.[13] Thus, the merger doctrine does not prevent the Cades from seeking reformation of the deed based on mutual mistake. The contract reflected an agreement that the Cades would retain the property's mineral rights, Cosgrove does not argue to the contrary, and she offered no evidence to contradict the contract. Because summary judgment should not have been granted for Cosgrove on this ground, we sustain this part of the Cades' first issue.

## 1.2. Statute of Limitations

Cosgrove also asserted the statute of limitations to defeat the Cades' claims. We first consider the statute of limitations as to the Cades' deed reformation claim. The Cades do not dispute that the four-year statute of limitations applies to claims for deed reformation or that they brought their claim more than four years after they executed the deed.

---

[11] *Harris*, 593 S.W.2d at 306; *Turberville v. Upper Valley Farms, Inc.*, 616 S.W.2d 676, 678 (Tex. Civ. App.—Corpus Christi 1981).

[12] *Davis v. Grammer*, 750 S.W.2d 766, 768 (Tex. 1988).

[13] *Id.*

6

Before discussing deed reformation claims, we must clarify the nature of the claim asserted and acknowledge that what the Cades stated in their petition was that they wanted a declaration "that the mineral interest of the Property was not conveyed by them to [Cosgrove] . . . and that they still hold clear legal title to these mineral interests." But they do not deny that the deed *did* convey the mineral interests, and that conveyance of the minerals is the basis of their suit. It is clear from reading their pleadings in their entirety that what they sought was a declaration reforming of the deed.[14]

### 1.2.1. *General rule regarding accrual of a claim to reform a deed*

Generally, a cause of action accrues, and therefore the limitation period begins to run, "when a wrongful act causes a legal injury."[15] But when determining how long a grantor has to bring an action to reform a deed, we must take into consideration the presumption of the grantor's immediate knowledge (the presumption): a grantor is presumed to know the contents of the deed immediately upon executing it.[16] Application of the presumption means that the limitation period on a claim to reform an incorrect deed begins to run as soon as the deed is executed because, as soon as the deed is executed, the grantor has

---

[14] *See Simpson v. Curtis*, 351 S.W.3d 374, 377, 381 (Tex. App.—Tyler 2010, no pet.) (reviewing a trial court's granting of a declaratory judgment reforming a deed to reserve a mineral interest and affirming as modified).

[15] *Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 623 (Tex. 2011).

[16] *Sullivan v. Barnett*, 471 S.W.2d 39, 45 (Tex. 1971).

actual knowledge that the deed is incorrect.[17] This rule has not been strictly applied in the past, however, and courts have noted numerous exceptions over the years.[18] We address here (1) how courts have (inconsistently) treated the presumption in the past, (2) the modern incarnation of the discovery rule, and (3) questions on how the earlier presumption case law applies today.

*1.2.2. The presumption has been held to be rebuttable—but in what circumstances?*

The Texas Supreme Court has said that the presumption can be rebutted, and "there are various circumstances, such as subsequent conduct of the parties as though the deed had not contained the error, which will excuse a delay in discovery of the mutual mistake."[19] In 1959, in *Miles v. Martin*, the Supreme Court considered whether to allow a grantor to move forward with a suit to reform a deed that had mistakenly omitted the grantor's mineral reservation.[20] The grantor Martin and the grantees had intended that Martin would reserve a royalty interest.[21] The prior grantor who had conveyed the property to Martin had also

---

[17]*Id.*

[18]*See, e.g., id.* at 45–46; *Broyles v. Lawrence*, 632 S.W.2d 184, 187–88 (Tex. App.—Austin 1982, no writ).

[19]*Sullivan*, 471 S.W.2d at 45.

[20]159 Tex. 336, 343, 321 S.W.2d 62, 67 (1959).

[21]*Id.* at 67.

reserved a mineral interest.[22]  The deed from Martin included the prior grantor's reservation but did not include Martin's intended royalty interest.[23]  Martin filed suit for reformation almost six years after the deed's execution.[24]

The Supreme Court concluded that the testimony showed that Martin may not have actually discovered the mistake more than four years before the suit was filed.[25]  As to when Martin *should have* discovered the mistake, the court stated that the evidence that he had been receiving delay rentals "indicate[d] that there may be an issue of fact" about whether he should have known of the mistake.[26]  Though the court did not hold that the deed language was ambiguous, the court stated that the parties to the deed "may have been mutually mistaken as to the legal effect of its provisions and believed that the instrument effectively reserved to [Martin] a one-fourth mineral interest in addition to that already owned by [the previous grantor]."[27]  The court remanded the case for a new trial to determine Martin's right to equitable relief.[28]  In summary, although

---

[22] *Id.* at 64, 67.

[23] *Id.* at 64.

[24] *Id.* at 69.

[25] *Id.* at 70.

[26] *Id.*

[27] *Id.* at 67.

[28] *Id.* at 70.

the reservation language in the deed was not ambiguous, Martin nevertheless may have been mistaken about the legal *effect* of the deed, and the fact that he had been receiving delay rentals raised a question about whether he should have known of the mistake.

Nearly ten years later, in *McClung v. Lawrence*, the Supreme Court once again considered whether the grantors were bound by the presumption.[29] As in *Martin*, the deed in *McClung* contained a reservation of royalty interest in the grantors but made no mention of the reservations of prior grantors.[30] The McClungs sought a reformation of the deed sixteen years after the deed was executed and filed of record.[31] There was no allegation that the language used to reserve the McClungs' interest was itself ambiguous, the Supreme Court did not hold that it was ambiguous, and the deed clearly did not include any mention of the prior reservations.[32] But the court held that rule from *Martin*—that the equitable remedy of reformation is available when parties to a deed are mistaken as to the legal effect of deed language—controlled, and it remanded the case for a trial on when the mistake in the deed was or should have been discovered.[33]

---

[29]430 S.W.2d 179, 181–82 (Tex. 1968).

[30]*Id.* at 180–81.

[31]*Id.* at 181.

[32]*Id.* at 180.

[33]*Id.* at 181–82.

10

In reaching its holding, the Supreme Court briefly discussed two earlier courts of appeals cases, *Kennedy v. Brown*[34] and *Kahanek v. Kahanek*.[35] The court of appeals in *McClung* had relied on these cases in holding that reformation was unavailable to the grantors.[36] The Supreme Court distinguished both cases on the ground that in those two cases, the grantors were not entitled to reformation because the reservations of mineral rights "had been *entirely omitted* from the deeds, a fact plainly evident."[37] Thus, unlike the McClungs's requested relief, the relief sought in *Kennedy* and *Kahanek* was not based on "a mistake of the parties as to the legal effect of the instruments."[38] This distinguishing of *Kennedy* and *Kahanek* suggested that the rule for reformation after limitations had run was that if *no* reservation of a mineral interest is reserved in the deed, the grantor has notice of the mistake, but if *some* mineral interest is reserved, the parties could be mistaken as to the legal effect of the reservation and therefore about whether the deed conforms to the parties' agreement.

---

[34]113 S.W.2d 1018 (Tex. Civ. App.—Amarillo 1938, writ dism'd).

[35]192 S.W.2d 174 (Tex. Civ. App.—Galveston 1946, no writ).

[36] 430 S.W.2d at 181.

[37]*Id.* at 181.

[38]*Id.* at 181 (emphasis added).

Three years later, however, in *Sullivan v. Barnett*,[39] the Supreme Court again addressed the issue, but this time it did not expressly rely on a "mistaken as to the legal effect of the language used" theory to reach its decision. Unlike *Martin* and *McClung*, the *Sullivan* case did not deal with the failure to include a reservation of a mineral interest. When the Sullivans conveyed to the grantees a half interest in some property, the deed mistakenly included an additional forty acres.[40] The Sullivans lived on that forty acres and continued to do so after the deed's execution.[41] The same mistake was repeated in a deed of trust from the Sullivans and the grantees in favor of Barnett.[42]

The Supreme Court stated that there were *numerous* exceptions to the rule that grantors are charged with knowledge, including "subsequent conduct of the parties as though the deed had not contained the error."[43] Thus, when the actions of both parties after execution of the deed show that the parties believed and behaved as though there was no error in the deed, the limitation period begins when the mistake was or should have been discovered.[44]

---

[39]471 S.W.2d at 45 (emphasis added).

[40]*Id.* at 41–42.

[41]*Id.* at 42–43.

[42]*Id.* at 41.

[43]*Id.* at 45.

[44]*See id.*

In a footnote, the court discussed its previous apparent acceptance of *Kennedy* and *Kahanek*, saying it had

> distinguished the McClung facts from those in Kahanek and Kennedy, and *we find no decision by this Court citing either of those cases with approval or following the rule stated by them on this point.* The holding in *Kahanek* was dicta, since in that case there was a finding of actual knowledge of the mutual mistake by grantor more than four years prior to suit. The *Kennedy* decision clearly recognizes an exception to the rule when the grantor is lulled into a sense of security by subsequent acts of the grantee.[45]

The court thus appeared to step away from allowing *Kahanek* and *Kennedy* to stand for a bright-line rule. The court then cited multiple cases in which a grantor who had accidentally conveyed more property than was intended was allowed to seek reformation of the deed after limitations had run.[46] The court thus indicated that whether the deed had language that could cause the grantor to be unsure about the legal effect of the deed was not *the* determining factor in rebutting the presumption.[47] That is, reformation after the limitation period might still be available even when the deed did not contain language that could cause the grantor to believe the deed was correct.

Toward the end of the *Sullivan* opinion, the Supreme Court stated that its holding was "supported by an established rule of law applicable to grantors who remain in possession of land which was inadvertently included in a deed by

---

[45] *Id.* at 46 n.3 (emphasis added).

[46] *Id.* at 45–46.

[47] *See id.*

13

mutual mistake," and "[a]s long as no rights of bona fide innocent purchasers have intervened, actions or defenses by such persons in peaceable possession based upon mutual mistakes in deeds and removal of clouds from title are not barred by the four-year statute of limitation."[48] In this case, the Cades did not continue to have physical possession of the property after the sale. They did, however, continue to receive royalty payments.

The *Sullivan* court cited with approval the opinion in *Luginbyhl v. Thompson*,[49] a case from the same court that later issued *Kennedy*. In *Luginbyhl*, the deed omitted the grantor's intended mineral reservation, the suit for reformation was filed six years after the deed's date, and reformation was allowed.[50] The contract between the parties in the case called for the grantor to reserve the mineral rights on half of the property.[51] Before executing the deed, the grantor leased the mineral rights on the half of the property that he intended to reserve.[52] He continued to receive payments under the lease after the execution of the deed.[53] The grantee leased the mineral rights to the other half

---

[48] *Id.* at 47.

[49] 11 S.W.2d 380 (Tex. Civ. App.—Amarillo 1928, writ dism'd).

[50] *Id.* at 381–82.

[51] *Id.* at 383.

[52] *Id.*

[53] *Id.*

of the property "but stated [after the deed's execution] that the mineral rights on the north half of the section belonged to" the grantor.[54]  The grantor learned of the mistake when he tried to sign a new mineral lease.[55]  The court of appeals upheld the trial court's judgment reforming the deed to reflect the parties' agreement, noting that "there was no fact nor circumstance to arouse [the grantor's] suspicion relative to the omission from the deed, and, in order to set in operation the statute of limitation, there must be some fact or circumstance to put him on inquiry."[56]

The later *Kennedy* court distinguished *Luginbyhl* on the ground that in *Luginbyhl*, the grantee had "permitted the grantor to collect the proceeds of the lease and, although having full knowledge that he was doing so, made no objection" and by doing so had "lulled the grantor into a sense of security which, under the law, excused him from exercising any effort to ascertain the fact that his rights under the contract had been omitted from the deed."[57]  In this case, the Cades continued to collect royalty checks from Chesapeake, and the summary judgment evidence does not show that Cosgrove took any action to assert her right to the minerals until after the limitation period had passed.

---

[54]*Id.*

[55]*Id.* at 381.

[56]*Id.* at 382.

[57]*Kennedy*, 113 S.W.2d at 1021.

15

To review, in *Luginbyhl*, where a mineral reservation was entirely omitted from a deed, the Amarillo court of appeals held that the limitation period on the grantor's claim for reformation began to run when the grantor discovered the mistake or when he should have discovered it by the exercise of reasonable diligence, not from the time that the grantor executed the deed.[58] The same court then held in *Kennedy* that when a deed omitted entirely the grantor's mineral reservation, the grantor was charged with knowledge at the time of the deed's execution that the deed did not reserve his mineral rights.[59] But *Kennedy* also distinguished *Luginbyhl* on the ground that the grantee in that case had acted in a manner that lulled the grantor into a false sense of security about what was in his deed, thereby exercising any effort to confirm his rights under the deed.[60] Thus, the *Kennedy* court recognized that even when the deed entirely omits a reservation and does not contain ambiguous language, in some circumstances the grantor may assert a claim for reformation after the limitation period would have otherwise run.[61] And we note that the *Kennedy* court also

---

[58]11 S.W.2d at 382.

[59]113 S.W.2d at 1021.

[60]*Id.*

[61]*See id.*

16

found important that the grantor in that case had hired his own attorney to prepare the deed and had signed the deed in the attorney's office.[62]

Then the Supreme Court saw the need to distinguish *Kennedy* in reaching its holding in *McClung*, thus giving *Kennedy* tacit approval. But then it later appeared to reject the part of *Kennedy* about plain omissions from a deed when it (1) cited *Luginbyhl* with approval, (2) stated that it had never approved *Kennedy* or had followed that part of *Kennedy*, and (3) pointed out that *Kennedy* had acknowledged the exception of when a grantee's actions lead the grantor to believe the deed is correct (suggesting that it did still approve of that part of *Kennedy*). In other words, case law on what circumstances allow rebuttal of the presumption has not followed a straight line. And at least as of *Sullivan*, the Supreme Court was unwilling to hold unequivocally that a grantor may never rebut the presumption when the mistake in the deed is that the deed omits a reservation entirely.

*1.2.3. Brown v. Havard*

Almost a decade after *Sullivan*, the Texas Supreme Court issued *Brown v. Havard*.[63] *Brown* involved a deed with an incorrect mineral reservation, but it was the grantees who wanted to reform the deed, not the grantors.[64] The court

---

[62] *Id.* at 1020.

[63] 593 S.W.2d 939 (Tex. 1980).

[64] *Id.* at 940.

held that the reservation clause in the deed was ambiguous.[65]  And the court held that the mistake in the deed was not "so plainly evident as to charge King [the grantee] with the legal effect of the words used."[66]  The court pointed out that even the justices on that court disagreed about the meaning of the clause used in the deed, and "[c]ertainly King, who was not a lawyer, cannot be charged as a matter of law with knowledge of the meaning of the reservation."[67]

The court did not state that reformation after limitations have run is available only when a deed contains some reservation that could cause a party to the deed to not understand the deed's legal effect.  But the opinion did note that "[p]rior to the Browns' rejection of the division order, King [the grantee] and his assignees were in possession of the land[,] and *there was nothing in the deed* to King or the Browns' conduct *to place them on notice as a matter of law*" that the grantors claimed the one-half interest they later asserted.[68]  This language could be read to mean that language in the deed *can* put a party on notice as a matter of law such that the party would not be permitted to show that he or she

---

[65]*Id.* at 942.

[66]*Id.* at 944.

[67]*Id.*

[68]*Id.* (emphasis added).

did not actually have knowledge of the deed's contents. But the court did not disavow or distinguish *Sullivan* and in fact cited it with approval.[69]

### 1.2.4. More Recent Discovery Rule Case Law

Between 1980 (the year that *Brown* was issued) and the most recent Texas Supreme Court case on the presumption (*Lesley*,[70] discussed below), the Texas Supreme Court issued opinions refining the body of law on the discovery rule. In its 1996 *Altai* and *S.V.* opinions, the court distilled its broad line of cases justifying deferred accrual of claims into the application of the discovery rule that we use today: that application of the rule should be permitted when the nature of the injury is inherently undiscoverable and the evidence of injury is objectively verifiable.[71] When the type of injury is one to which the discovery rule applies, then a court looks at when the plaintiff knew or with the exercise of reasonable diligence should have known of the injury.[72] The court stated that in deciding whether a claim is inherently undiscoverable, a court looks at whether the injury

---

[69]*Id.*

[70]*Lesley v. Veterans Land Bd. of Tex.*, 352 S.W.3d 479 (Tex. 2011).

[71]*Computer Assocs. Int'l, Inc. v. Altai*, 918 S.W.2d 453, 456 (Tex. 1996); *S.V. v. R.V.*, 933 S.W.2d 1, 3–8 (Tex. 1996).

[72]*Altai*, 918 S.W.2d at 455.

is the *type* of injury that is undiscoverable, not whether the *particular* injury in the case at hand was undiscoverable.[73]

The holdings in *Martin*, *McClung*, *Sullivan*, and *Brown* were fact-based rather than category-based. They did not address whether a mistake in a deed is a *type* of injury that is inherently undiscoverable and went straight to an analysis of whether the party wanting to avoid the presumption actually knew or should have known of the error in the deed, that is, whether some circumstance excused the failure to discover it. These courts, then, appeared to accept that a mistake in a deed is the type of injury for which accrual of a claim based on the injury may be deferred. Since *Altai*, the Texas Supreme Court has not addressed how the rebuttable presumption fits with the discovery rule. But in *Lesley*, its most recent case involving deed reformation after limitations had run, it held that the grantor's claim for reformation was not barred by the statute of limitation.

### 1.2.5. *Lesley v. Veterans Land Bd.*

The Texas Supreme Court issued *Lesley v. Veterans Land Board of the State of Texas* in 2011. This case dealt with a mineral reservation in a deed.[74] The court said the reservation was "not as opaque as the one in *Brown*," but it contained provisions that made it unclear about what was being reserved, and a subsequent grantee appeared to share the grantor's understanding of what had

---

[73]*Id.* at 456; *see also Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006).

[74]*Lesley*, 352 S.W.3d at 484–86.

been reserved.[75]  The court said that "[i]n these circumstances, it cannot be said that, as a matter of law, Lesley [the grantor] knew or should have known of the mistake in her deed when she executed it.  Whether the claim for reformation is barred by limitations involves disputed facts."[76]  The court remanded the claim to the trial court for further proceedings.[77]

Because the *Lesley* case also involved confusing mineral reservation language, the court did not address other circumstances where reformation might be sought and whether other deed problems are the type of which the grantor has knowledge as a matter of law at the time of the deed's execution.  The court thought it was worth noting that the grantee shared the grantor's understanding of the deed's language.[78]  This notation could be the court's recognizing that mutual mistake is enough to rebut the presumption, or it could be the court's simply recognizing that if the grantee shares the grantor's understanding of a deed's language, then the language is not so clear as to give the grantor knowledge as a matter of law.

We should note that in *Lesley*, the Texas Supreme Court did not articulate that the discovery rule was the basis for its holding that reformation was

---

[75] *Id.* at 486.

[76] *Id.*

[77] *Id.* at 492.

[78] *Id.* at 486.

available. It mentioned the discovery rule in deciding a different issue in the case—whether the holder of the right to execute a mineral lease on property owes a fiduciary duty to nonparticipating royalty owners.[79] But in the discussion of whether Lesley was entitled to reformation of the deed after the limitation period has passed, the court did not discuss whether the injury alleged by Lesley was the type to which the discovery rule should apply.[80]

*1.2.6. Recent cases from this court:* Kidwell v. Black *and* Poag v. Flories

This court has also addressed the issue,[81] and two relatively recent opinions must be acknowledged. The 2003 case of *Kidwell v. Black* involved an incorrect block number in a series of deeds and lien instruments.[82] In this opinion, we cited *Brown* for the proposition that the statute of limitation begins to run on a claim to reform a deed based on mutual mistake when the mistake is discovered or, in the exercise of reasonable diligence, should have been

---

[79]*Id.* at 488–89.

[80]*Id.* at 484–86.

[81]*See, e.g.*, *Mason v. Univ. of the S.*, 212 S.W.2d 854, 857 (Tex. Civ. App.—Fort Worth 1948, writ ref'd n.r.e.) (noting the presumption "in the absence of proof to the contrary, that the parties were familiar with the contents and meaning of the instrument from the date of its execution," holding that the evidence supported the trial court's finding of mutual mistake in the execution of a deed of trust, and affirming the trial court's reformation of the deed of trust sixteen years after its execution).

[82]104 S.W.3d 686, 686–87 (Tex. App.—Fort Worth 2003, pet. denied).

discovered.[83]  We noted that when the mistake should have been discovered was a question of fact, and we upheld the trial court's implied ruling that the claim was not barred.[84]  In that case, however, limitations were asserted against the grantee, not the grantor.

The second case, *Poag v. Flories*, is cited by Cosgrove and so should be discussed here.[85]  *Poag* was a probate case involving a subsequent grantee (Poag) under an administrator's deed.[86]  The administrator's deed conveyed the "surface estate only."[87]  The grantee in that deed then conveyed its interest in the property to Poag under a deed that did not state that it conveyed the "surface estate only" but did state that it was subject to any and all reservations affecting the property.[88]  Poag sued for reformation, not of the deed conveying the property to him, but of the prior administrator's deed.[89]  The administrator's deed had been recorded, and we held that the recording put Poag, a third party to the deed, on notice of the deed's contents, and, thus, the discovery rule did not

[83]*Id.* at 689–90.

[84]*Id.* at 690.

[85]317 S.W.3d 820, 825 (Tex. App.—Fort Worth 2010, pet. denied).

[86]*Id.* at 823–24, 826.

[87]*Id.* at 826–27.

[88]*Id.*

[89]*Id.* at 823–24.

prevent limitations from running.[90]  We stated in a footnote that the original grantee might not be able to argue mutual mistake, either, because the deed expressly stated that it conveyed the "surface estate only."[91]  But that language was dicta, and we cited for that proposition the court of appeal opinion in *Lesley*—which the Texas Supreme Court subsequently overruled.[92]

This court has therefore indicated that a recording of a deed puts a *third party* to the deed on notice of the deed's contents, and if the deed is recorded and does not contain ambiguous language, the discovery rule will not apply to the claim.[93]  But in that opinion, we did not directly address whether the discovery rule could apply to a reformation claim as between the original parties to the deed when the deed is recorded.  And we did not discuss whether a mistake in a deed is the type of injury for which the discovery rule is or is not available but instead went directly to the analysis of whether the grantee should

---

[90]*Id.* at 827; *see also Cox v. Clay*, 237 S.W.2d 798, 804 (Tex. Civ. App.—Amarillo 1950, writ ref'd n.r.e.) (op. on reh'g) (stating that "[t]he object of the recording acts is to protect innocent purchasers . . . against previous deeds" and that the recording of an instrument "carries notice of its contents only to those who are bound to search for it, such as subsequent purchasers under the grantor in such an instrument," and holding that limitations did not bar the grantor's claim for reformation).

[91]*Poag*, 317 S.W.3d at 827 n.1.

[92]*Id.*

[93]*See also HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 887 (Tex. 1998) (stating that when constructive notice applies, it creates an irrebuttable presumption of actual notice).  *But see Brown*, 593 S.W.2d at 944 (allowing a subsequent grantee to reform a deed).

have known of the mistake. Thus, like the Texas Supreme Court in *Lesley*, we implicitly accepted that deed reformation is the type of claim for which the discovery rule is available under the right facts.

### 1.2.7. Applying the Law to this Case

In summary, the discovery rule defers accrual of a cause of action until the diligent plaintiff knew or should have known of the alleged injury.[94] Likewise, in rebuttable presumption cases, the courts have said that the claim for reformation does not accrue until the grantor actually knew or, in the exercise of reasonable diligence, should have known of the mistake. In both discovery rule cases and cases involving the presumption, the same rule applies for the running of limitations. Courts have thus appeared to accept the application of the discovery rule to deed reformation claims. We will now state explicitly what we have previously only implied: a mutual mistake in a deed is a type of injury for which the discovery rule is available.

We recognize that the Texas Supreme Court has stated that the deferring of the accrual of a claim based on fraudulent concealment is a distinct concept from deferred accrual based on the discovery rule.[95] Thus, the discovery rule is

---

[94]*Kerlin v. Sauceda*, 263 S.W.3d 920, 925 (Tex. 2008).

[95]*See Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 736 (Tex. 2001). We refer to the delay in accrual of a claim rather than tolling of the limitations period after limitations has begun. The Texas Supreme Court has used both phrases in discussing the discovery rule. *See id.* (stating that the discovery rule and fraudulent concealment can toll limitations); *S.V.*, 933 S.W.2d at 4 (citing *Trinity River Auth. V. URS Consultants, Inc.*, 889 S.W.2d 259, 262 (Tex. 1994) as

25

not the only legal doctrine that allows a party to bring suit beyond the time at which limitations appear to have run, and, therefore, we have considered whether deferring accrual of a claim for reformation based on mutual mistake, like fraudulent concealment, is a distinct legal basis for deferring accrual of a claim from the discovery rule. But because the language used to discuss deferral of a claim for reformation and language used to discuss the discovery rule is essentially the same, because the Texas Supreme Court has discussed the history of case law on deferred accrual of claims and divided them into only the two categories of the discovery rule and fraudulent concealment, and because courts have implicitly applied the discovery rule to these types of claims, we decline to acknowledge a separate legal basis for deferring accrual of a claim for reformation apart from the discovery rule or fraudulent concealment.

We now turn to whether the summary judgment evidence raises a fact issue about whether the Cades knew or should have known of the omission in the deed within the limitation period. Having held that the presumption may be rebutted, we must start with the proposition that execution of the deed is not enough to irrefutably establish a grantor's knowledge as a matter of law so that a grantor will always be prohibited from introducing evidence of when the grantor

_____

distinguishing between deferring accrual of a claim, thereby delaying the start of the limitations period, and tolling the running of limitations once the period has begun, and stating that the discovery rule defers accrual of a claim). Because we discuss here the delay in the accrual of the claim rather than some circumstance that stopped the limitation period from running after it had begun, we use the term "deferred accrual."

actually learned of the deed's true contents.  Nor can execution of the deed absolutely establish when the grantor *should* have known of the deed's contents such that the trial court would be prohibited from considering evidence of when the grantor *should* have known.  To hold that execution of a deed has that effect in all cases as a matter of law, we would have to overrule all prior case law holding that the presumption may in some circumstances be rebutted and hold that the presumption is irrebutable.  Because the presumption may be rebutted, we must take the position that a grantor may introduce, and the factfinder may consider, evidence disputing that the grantor actually knew of the deed's contents at the time of its execution and that the grantor should have known of the deed's contents within the limitation period.

In a letter brief, Cosgrove argues that property code section 13.002 dictates that the Cades had notice of the existence of the instrument because the deed was recorded in the public records of the property county.[96]  The recording of an instrument does not work to create notice as a matter of law in every circumstance.[97]  The Cades are not third parties to the deed and are not a person interested in an estate admitted to probate—persons charged with

---

[96]Tex. Prop. Code Ann. § 13.002 (West 2004).

[97]*See HECI Exploration Co.*, 982 S.W.2d at 887 ("[W]hen the rationale for imposing constructive notice is lacking, public records have not been held to create an irrebuttable presumption of notice.").

knowledge as a matter of law with instruments filed in the public records.[98]  The

Cades were perfectly aware of the deed's existence, and they had no reason

after conveying the property to search the public records to examine the deed,

absent some circumstance to put them on notice of a problem.

We must next consider the extent of this rule that the presumption may be

rebutted and determine whether the presumption may be rebutted to allow

correction of any mutual mistake in a deed or only those kinds of mistakes that

may not be plainly evident to parties when they read the deed.  That is, we must

decide whether the Cades may be allowed to rebut the presumption when they

do not rely on ambiguous language in their deed to explain why they did not

realize sooner and should not have realized sooner that their deed contained a

mistake.

In *Lesley* and *Brown*, the Texas Supreme Court recognized that language

in a deed that could reasonably cause a party to be mistaken as to the deed's

legal effect was an exception to the presumption.[99]  Cosgrove argues in her brief

that this is the only circumstance by which a grantor may rebut the presumption.

But further back than that, in *Sullivan*, the Texas Supreme Court held that a party

should be allowed to rebut the presumption, and it did not reach that holding by

first holding that deed language could have caused the parties to misunderstand

---

[98] *See id.*

[99] *Lesley*, 352 S.W.3d at 485–86; *Brown*, 593 S.W.2d at 944.

the deed's effect.[100]  And that court cited cases allowing reformation for mistakes that should have been plainly evident on the face of the deed.[101]  Thus, we must either (1) distinguish *Sullivan* or determine that it has been abrogated or (2) hold that in some circumstances, even when the alleged error in the deed should be apparent, a party to the deed may show that it did not know and had reason not to know of its contents.  We choose to follow the latter approach.

As stated above, the discovery rule applies to types of injuries that are "inherently undiscoverable."[102]  As yet, we have no guidance from the Texas Supreme Court on how to apply this standard to the body of law on deed reformation.  But the court has said that an injury is "inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence."[103]  Harmonizing this language with the fact that case law on deed reformation has not been rejected by the Texas Supreme Court, we conclude that a mutual mistake in a deed is an injury that a grantor is unlikely to discover within the prescribed limitations, despite due diligence, unless some circumstance puts the grantor on notice of the mistake.  And until the Texas Supreme Court instructs us otherwise, we will continue to look to older cases on

---

[100]471 S.W.2d at 45–46.

[101]*Id.* at 45.

[102]*Altai*, 918 S.W.2d at 456.

[103]*S.V.*, 933 S.W.2d at 7.

29

rebutting the presumption for guidance on what circumstances should have put the grantor on notice and what kind of facts will suffice to rebut the presumption.

The court in *Sullivan* stated that it had "never permitted the rule [presuming the grantor's immediate knowledge] to blindfold it to the true facts concerning actual discovery of the mutual mistake and subsequent conduct of the parties with respect thereto."[104] Applying this language, and noting that the rights of third parties are not involved and would not be affected by reformation and that reformation would, at most, put the parties in the position that they bargained for, we hold that the presumption does not prevent the Cades from introducing evidence to establish the true facts regarding when they knew or should have known of the mistake in the deed.

When the Cades knew or should have known of the deed's error is a fact-based inquiry.[105] We look to see what evidence the parties introduced to show whether the Cades actually knew or should have known of the deed's contents

---

[104]471 S.W.2d at 45.

[105]*See Lesley*, 352 S.W.3d at 486 (determining that the question of whether Lesley's claim for reformation was barred by limitations involved disputed facts); *Brown*, 593 S.W.2d at 944 (stating that the question of whether the grantee should have known of the deed's recitals by the exercise of reasonable diligence is one of fact); *see also Mason*, 212 S.W.2d at 857 (stating that it was "rather hard for us to see how [the parties to the instrument] could have been mistaken about such an important matter" but that the court was "not permitted to substitute our judgment on the facts for that of the trial court so long as there is any evidence of probative value to support his findings").

more than four years before they brought suit. In this case, the evidence regarding the Cades' knowledge is as follows:

- The parties executed the deed in October 2006, and the deed did not contain language that restricted the conveyance to the surface estate;

- The sales contract for the property stated, "Sellers to retain all mineral rights";

- The warranty deed states that the conveyance is "made subject to any and all valid and subsisting restrictions, easements, rights of way, reservations, maintenance charges together with any lien securing said maintenance charges, zoning laws, ordinances of municipal and/or other governmental authorities, conditions and covenants, if any, applicable to and enforceable against the above-described property," but it does not state that it conveys only the surface estate;

- On December 11, 2008, the Cades sent a letter to Chesapeake informing it that their address had changed;

- In early January 2009, Chesapeake paid a shut-in royalty to the Cades by check;

- In January 2010, Chesapeake sent the Cades another check for a shut-in royalty payment, and this check had the Cades' new address on it;

- In October 2010, Chesapeake sent the Cades a letter informing them of their right as royalty owners to request information about deductions from their royalty payments;

- In connection with their closing, the parties signed a document titled "Acceptance of Title and Closing Agreements" (closing agreement), in which they stated that they "agree to comply with all provisions of the real estate contract . . . or other documents executed in connection with the closing of this transaction" and that they "agree to fully cooperate, adjust, and correct any errors or omissions and to execute any and all documents needed or necessary to comply with all provisions of the above mentioned real estate contract";

- The deed states that after recording, it is to be returned to "Ted L. Tittsworth," an attorney also named in the closing agreements and apparently representing or connected with the title company;

- Michael stated in an affidavit that he and his wife never intended to convey the mineral rights on the property;

32

- Michael stated in his affidavit that he first learned of the mistake in the deed in December 2010 when he spoke to someone with Chesapeake;

- Billie stated in her affidavit that in December 2010, she called Cosgrove to discuss what Michael had learned from his conversation with Chesapeake and that Cosgrove told her that she [Cosgrove] had executed the documents sent to her by Chesapeake, that the title company had failed to put the reservation of mineral rights into the warranty deed, and that Chesapeake's delay in drilling had caused the Cades to lose their mineral rights to the property;

- In Michael's responses to Cosgrove's request for admissions, he denied that he and Billie delivered the deed to Cosgrove, stating that he and Billie "executed the documents at closing, then a person from the title company took all of the documents to another room, and she gave us and the Cosgroves documents when she returned";

- Billie's response contained the same statement; and

- Cosgrove attached an affidavit to her motion for summary judgment, and it contained no statements regarding the intentions of the parties regarding the minerals or when she discovered that the deed did not contain the reservation.

Michael also stated in his affidavit that the title company assured them that the deed contained their reservation and that in December 2010, someone from

33

Chesapeake told him that Chesapeake had sent forms to Cosgrove, who told the Chesapeake employee that she did not believe that she owned the mineral rights, but the trial court sustained Cosgrove's objections to these two statements. But the evidence that the trial court considered included evidence that the Cades did not know the deed contained the mistake at the time they executed it and that they continued to receive royalty payments and correspondence from Chesapeake after signing the deed. This is some evidence that the Cades attempted to exercise reasonable diligence in protecting the mineral interests they thought they owned by keeping in communication with Chesapeake and by making sure that Chesapeake had their correct address.[106] There is no evidence that a copy of the deed was given to the Cades after they had signed it. This evidence is sufficient to raise a fact issue about whether the Cades actually knew of the deed's contents within the limitations period.

This evidence is also sufficient to raise a fact issue about when the Cades should have known of the deed's contents. No evidence suggested that Cosgrove disputed the Cades' ownership of the mineral rights until she received forms from Chesapeake or that she did anything to create a question about who owned the minerals. Chesapeake continued to treat the Cades as the mineral owners for years after execution of the deed, and no evidence shows that any

---

[106] *See Wagner & Brown, Ltd.*, 58 S.W.3d at 736 (Tex. 2001) (stating that royalty owners have some obligation to exercise reasonable diligence in protecting their interests).

circumstance that occurred before December 2010 should have put the Cades on inquiry about whether they had retained the mineral rights.[107]  We hold that the trial court should not have granted summary judgment for Cosgrove on the reformation claim based on limitation, and we sustain this part of the Cades' first issue.

### 1.2.8.  Summary Judgment as to the Cades' Remaining Claims

As to the Cades' claims for tortious interference and civil theft, Cosgrove sought summary judgment on the ground that the Cades knew or should have known about any possible claim under these causes of action on the date of closing—October 12, 2006.  But the injury giving rise to both the tortious interference claim and the theft claim did not arise until Cosgrove asserted mineral rights to the property.  That is, the mistake in the deed was an injury for which the Cades could seek the remedy of reformation, but it did not give rise to a tort claim.  Under the evidence, the mistaken deed was not in itself a ground to assert a tort claim against Cosgrove because it was not a wrongful act committed by her, and if Cosgrove had never asserted a right to the payment from Chesapeake, the Cades would not have had any reason to assert these

---

[107] *See Martin*, 321 S.W.2d at 70 (including the grantor's continuing to receive delay rentals as a fact raising a fact issue about whether he should have known of the mistake in his deed); *Luginbyhl*, 11 S.W.2d at 382 ("[T]here was no fact nor circumstance to arouse [the grantor's] suspicion relative to the omission from the deed, and in order to set in operation the statute of limitation, there must be some fact or circumstance to put him on inquiry.").

claims.[108]  The summary judgment evidence was that Cosgrove did not assert rights to payments under the mineral lease until at least December 2010.  The Cades filed their claim on February 24, 2011.  The Cades asserted these claims within limitation period on those causes of action.[109]  We sustain this part of the Cades' first issue.

Similarly, Cosgrove's limitation argument also fails as to the Cades' breach of contract claim.  There is no allegation that Cosgrove breached any contract other than the closing agreement, in which she agreed to cooperate in correcting any errors in any documents executed in connection with the transaction.  The summary judgment evidence is that acts alleged by Cosgrove in violation of this agreement occurred in December 2010, and the Cades' suit was therefore brought within the limitations period.[110]  We sustain the remainder of the Cades' first issue.

---

[108] *See, e.g.*, *Waxler v. Household Credit Servs., Inc.*, 106 S.W.3d 277, 281 (Tex. App.—Dallas 2003, no pet.) (holding that the issuing of a negative credit report and the charging of an account off to bad debt were not themselves unlawful acts and that the plaintiff's negligence claim "could only accrue when she sustained damages resulting from these actions").

[109] *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (West Supp. 2013), § 16.051 (West 2008).

[110] *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.051; *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) ("It is well-settled law that a breach of contract claim accrues when the contract is breached.").

## 2. The Cades' Motion for Summary Judgment

The Cades sought summary judgment on their reformation claim and on all of the elements of their breach of contract claim except damages. In their second issue, they argue that the trial court erred by denying their motion for partial summary judgment.

### 2.1. The Cades' Deed Reformation Claim

Although the evidence is enough to raise a fact issue on when the Cades knew or should have known of the deed's contents, we cannot say that it establishes as a matter of law that they did not and should not have in the exercise of reasonable diligence discovered the mistake sooner. There was no summary judgment evidence considered by the trial court regarding whether the Cades read the deed at closing (and if so, what they understood it to mean), what the Cades were told about the deed at closing, or any other circumstance explaining why they did not discover at closing that the deed did not comply with the sales contract. Although Michael stated in his affidavit that he "specifically was assured by the title company that the reservation" was included in the deed, the trial court sustained Cosgrove's hearsay and best-evidence rule objections to this statement. There was also no evidence addressing whether the Cades had ever seen the deed at any other time after closing, and if they had, why they believed it did not convey the mineral rights. Because we hold that the Cades have not established their right to judgment as matter of law on their claim, we overrule this part of the Cades' second issue.

## 2.2. The Cades' Breach of Contract Claim

The Cades also argued that they established as a matter of law that Cosgrove breached the "Acceptance of Title and Closing Agreements" and that they are entitled to specific performance requiring Cosgrove to execute a correction deed. Correction deeds have been used to change the conveyance of the original deed.[111] Recently, however, the Texas Supreme Court has clarified that the proper use of a correction deed is narrow in scope.[112] A correction deed may be used only to correct facial imperfections, such as a defective description of the grantor's capacity.[113] To change the deed to eliminate the conveyance of the mineral estate is more than a facial imperfection.[114] As such, the Cades could not use a correction deed for the purpose they intended, and they therefore were not entitled to specific performance. If what the Cades actually sought was

---

[111] *See, e.g.*, *CenterPoint Energy Houston Elec., L.L.P. v. Old TJC Co.*, 177 S.W.3d 425, 433 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (holding that the correction deed conveyed the grantor's reversionary interest that had been set out in the original deed); *Rogers v. Carter*, 385 S.W.2d 563, 566 (Tex. Civ. App.—San Antonio 1964, writ ref'd n.r.e.) (reciting as background facts that 200 acres had been inadvertently omitted from a deed but that those acres had been subsequently conveyed by correction deeds).

[112] *Myrad Props.*, 300 S.W.3d at 750.

[113] *Id.*

[114] *See, e.g.*, *Acker v. Guinn*, 464 S.W.2d 348, 352 (Tex. 1971) (noting that a reservation of mineral rights creates a distinct, separate estate that is dominant to the surface estate).

not a correction of the 2006 deed but for Cosgrove to execute a new instrument conveying the mineral back to them, their pleadings do not make that clear.

Cosgrove did not raise as a ground for summary judgment on this claim that the Cades were not entitled to the correction deed that they sought as a matter of law, and, accordingly, the trial court could not have granted summary judgment for Cosgrove on the breach of contract claim on that ground.[115] But because the Cades are not entitled to the relief that they seek on their breach of contract claim, the trial court did not err by denying their motion for summary judgment seeking specific performance. We overrule the remainder of the Cades' second issue.

### 3. Cosgrove's Appeal

In her sole issue on appeal, Cosgrove argues that the trial court erred by holding that it would be inequitable and unjust to award attorney's fees based on the facts of this lawsuit. Because we have held that the trial court erred by granting summary judgment for Cosgrove, we overrule this issue as moot.

### Conclusion

Having sustained the Cades' first issue and having overruled the Cades' second issue and Cosgrove's sole issue, we reverse the trial court's summary judgment and remand this case for further proceedings.

---

[115] *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 339 (Tex. 1993) (stating that a summary judgment motion "must stand or fall on the grounds expressly presented in the motion").

                                        /s/ Lee Ann Dauphinot
                                        LEE ANN DAUPHINOT
                                        JUSTICE

PANEL:  DAUPHINOT, WALKER, and GABRIEL, JJ.

WALKER and GABRIEL, JJ., concur without opinion.

DELIVERED:  April 3, 2014