## BAKER v. BAKER.

### No. 11219.

Court of Civil Appeals of Texas. San Antonio.

May 23, 1945.

Rehearing Denied July 5, 1945.

W. O. Gross, of Mineral Wells, Croom & Croom, of Houston, Johnson & Rogers and Nat L. Hardy, all of San Antonio, Vinson, Elkins, Weems & Francis, of Houston, and Black, Graves & Stayton, of Austin, for appellant.

Rawlings, Sayers & Scurlock and Cantey, Hanger, McMahon, McKnight & Johnson,

all of Fort Worth, and Eskridge & Groce, of San Antonio, for appellee.

SMITH, Chief Justice.

This cause has been remanded by the Supreme Court to this Court, with instructions (1) to reverse the judgment of the trial court and remand the cause for new trial, if we find the evidence insufficient to support the verdict of the jury, or (2) to affirm the judgment of the trial court, if we find the evidence sufficient to support the verdict of the jury. Baker v. Baker, Tex.Sup., 183 S.W.2d 724, loc. cit. 729.

The facts of the case and the contentions of the parties have been fully stated in the prior opinions of this and the Supreme Courts. Baker v. Baker, Tex.Civ.App., 169 S.W.2d 1016; Id., Tex.Sup., 183 S.W. 2d 724.

In its opinion, the Supreme Court recognized that Myla Baker's suit was one for the specific performance of an oral contract alleged to have been made by Earl M. Baker to deliver to Myla Baker two-thirds of the common stock of the Gunter Hotel Corporation, Baker v. Baker, Tex. Sup., 183 S.W.2d 724, loc. cit. 728. Special Issues Nos. 1 and 4 are necessary to support the judgment. Myla Baker does not now assert that the judgment rendered by the trial court is based upon the jury's answers to Special Issues Nos. 2 and 3. Consequently, we need not discuss said issues.

Special Issues Nos. 1 and 4, together with the jury's answers thereto, read as follows:

"Question No. 1: Do you find from a preponderance of the evidence that on December 10, 1938, the defendant, Earl M. Baker, orally agreed to subsequently deliver two-thirds (2/3) of the stock in the Gunter Hotel Corporation to the plaintiff, Myla Baker? Answer 'yes' or 'no.'

"We, the jury, answer: Yes."

"Question No. 4: Do you find from a preponderance of the evidence that on the occasion of the signing of the instruments on December 11, 1938, it was agreed by and between Myla Baker's attorney and Earl M. Baker's attorney that the release signed by Myla Baker would not become effective until the stock in the Gunter Hotel Corporation was delivered to the plaintiff? Answer 'yes' or 'no.'

"We, the jury, answer: Yes."

We are of the opinion that the evidence adduced below was sufficient to support the jury's answer to Special Issue No. 1. On the other hand we are of the opinion, and so hold, that the evidence was insufficient to support the jury's answer to Special Issue No. 4.

It is obvious from its opinion that the Supreme Court, as did this Court, construed the jury's answer to Special Issue No. 4 as a finding that Earl M. Baker orally agreed that the blanket release, *alone* among the sixteen other instruments executed and delivered by the respective parties at the same time with the release, should not become effective until Earl M. Baker delivered two-thirds of the Gunter Hotel stock to Myla Baker. A finding that the oral agreement applied to all the instruments executed and delivered along with the release would not support the granting of the relief to Myla Baker which was awarded by the trial court's judgment. The Supreme Court said:

"From the facts of this case it appears evident to us that the transaction as a whole was *not so integrated that the parol* agreement might not affect the release *alone without reference to the various other instruments.*" (Italics ours.) Baker **v.** Baker, 183 S.W.2d 724, loc. cit. 727.

As to what was said and done, with reference to the disputed agreement relating to the delivery of Gunter Hotel Corporation stock, Mr. Sam Sayers, Myla Baker's attorney, testified as follows:

"Q. What was said, if anything, at that time? A. After they all had been signed and the notary public had put her seal and signature on each instrument, I said, 'Now this transaction is not completed and these papers will not be final until the stock in the Gunter Hotel, the two-thirds of Miss Myla's, is delivered to her; and these papers are not to be placed on record.' And that I would keep the papers that belonged to Miss Myla, and Judge Canaday (attorney for Earl M. Baker) would keep the papers that belonged to Earl, or that he would get after the stock, the two-thirds of the Gunter Hotel stock, was delivered. And Judge Canaday agreed to it and took them and I took hers and put them in the safe, and Judge Canaday left with his."

Miss Myla Baker testified as follows:

"Q. Were there some deeds signed up there that morning also? A. There were some. Mr. Sayers asked Judge Canaday as we were passing these papers, he said, 'This deal will not be finished until the

Gunter stock is sent to us.' And Judge Canaday says, 'I will see that stock is sent up to you right away, just as soon as possible.' * * *

"Q. Now, Miss Myla, let's get back to this conversation. You have already testified in substance, as I understand it, as to some things that happened. Now, when Mr. Sayers and Judge Canaday, after you had signed these papers and they had been given to Judge Canaday and Mr. Sayers, just tell the jury again what was said there by Judge Canaday or Mr. Sayers with respect to what would be done with those documents. A. Mr. Sayers said, 'Now, this deal will not be finished until this Gunter stock is sent to us, and they will not go on record until this Gunter stock is in.' And Judge Canaday said 'That is all right, I understand it, and the stock will be sent to you.'

"Q. What, if anything, was said with respect to who would have custody of these documents in the meantime? A. Well, Judge Canaday and Mr. Sayers."

Miss Jerrine Hancock, Mr. Sayers' secretary, who was present at the time of the transaction and notarized the various instruments in question, testified as follows:

"Q. I will ask you whether or not at the time or about the time, or after the papers were signed, up there in the office that Sunday morning, while all the parties were present, if you heard any discussion relating to the Gunter Hotel stock? A. Yes, sir, I did.

"Q. Tell the jury what you heard with respect to that. A. Well, Mr. Sayers and Judge Canaday,—Mr. Sayers gave me some of the papers to keep in the file and he said, 'These are to be kept until the final settlement, until Mr. Baker turns over two-thirds of the Gunter stock to Miss Myla Baker, these papers are not to be recorded before that time.'

"Q. Who did he make that statement to? A. Well, the conversation was between him and Judge Canaday.

"Q. And what did Judge Canaday say? A. Well, he seemed to be agreeable. They agreed to that. * * *

"Q. They had passed the papers around, and who said what? A. Either Mr. Sayers or Judge Canaday, the conversation was between the two, and Mr. Sayers told him that he would keep a set of these and turn a set over to Judge Canaday, and they were to be recorded later, when this transaction was closed, when the Gunter stock was transferred to Miss Myla, and not before that."

In the course of her cross-examination, Miss Myla Baker gave the following testimony:

"Q. And you knew when you took that release that you were getting a full release from Earl and you knew you were giving him a full release? A. I was, with his word of honor that the Gunter stock would come on, and it was not to be released or put on record until the Gunter stock was delivered."

This narrative assertion with reference to the agreement made by Earl Baker, if isolated from the remainder of the testimony of Myla Baker, might possibly be construed as supporting the jury's finding that the effectiveness of the release, and of the release alone, was conditioned upon the delivery of the Gunter Hotel Corporation stock. However, when viewed in its proper background and in connection with the remainder of Miss Baker's testimony, its probative force as supporting the finding that the release alone was conditional is so slight that the finding can not stand. This testimony, when considered with the other testimony on the point, adduced by appellee, must be reasonably construed as disclosing an agreement that the release as well as all other contracts involved were subject to the condition that the Gunter Hotel Corporation stock be delivered, before any of such agreements should become effective. Under the prior holdings of this Court, as well as the holdings of the Supreme Court, such agreement is not enforcible in this case.

We conclude that the evidence is insufficient to support the jury's answer to Special Issue No. 4, without which the judgment can not stand, and in accordance with the Supreme Court's directions, the judgment is reversed and the cause remanded to the court below for new trial.