## BAKER v. BAKER.

### No. 11688.

Court of Civil Appeals of Texas.
San Antonio.

July 9, 1947.

Rehearing Denied Oct. 22, 1947.

See also 193 S.W.2d 857.

Parker, Smith & Rice, of San Antonio, for appellant.

Wm. A. Vinson, Tarlton Morrow and Sam G. Croom, all of Houston, Carl Wright Johnson, of San Antonio, Charles L. Black, Graves & Dougherty and Black & Stayton, all of Austin, and Vinson, Elkins, Weems & Francis, of Houston, for appellee.

MURRAY, Justice.

This suit was instituted in the District Court of Bexar County by Myla Baker against Earl M. Baker, seeking to recover two-thirds of the stock of the Gunter Hotel Corporation with an accounting, or for damages. This appeal is from the second trial of the case, judgment for plaintiff in the first trial having been appealed to this Court and by this Court reversed and rendered (169 S.W.2d 1016). A writ of error was granted by the Supreme Court and the judgment of the Court of Civil Appeals reversed and the cause remanded to this Court (142 Tex. 191, 183 S.W.2d 724, 725), and by this Court remanded to the District Court for a new trial (188 S.W.2d 733).

The present trial began to a jury, but, at the close of plaintiff's evidence on motion of defendant, the trial court instructed the jury to return a verdict for defendant and judgment was entered in accordance therewith. Myla Baker has prosecuted this appeal.

We will here copy the statement of this case made by the Supreme Court through Justice Folley, then of the Commission of Appeals:

(Myla Baker is there referred to as petitioner and Earl Baker as respondent, while, of course, in the present case they are appellant and appellee, respectively.)

"For many years prior to the inception of this suit the petitioner and her brother, T. B. Baker, were engaged as partners in the hotel business, first in Kansas, and later in Texas where they accumulated large interests in hotels, farms, ranches and other property. The respondent, Earl M. Baker, is a nephew of petitioner and T. B. Baker. Since his early youth he has been associated with petitioner and T. B. Baker in their business activities and from time to time acquired certain interests of his own. About 1930, or shortly thereafter, the partnership experienced financial difficulties, and respondent, with the consent of the partners, assumed greater responsibilities in the management of the business enterprises and acquired in his own name most of the property theretofore held by the partnership. The true character of such arrangement is highly controverted. The petitioner claimed that respondent was holding such property only in trust for the partnership under an agreement between the parties to that effect. The respondent claimed that the property belonged to him since he had paid valuable consideration therefor from his own funds. No specific finding was made on this question in the trial court. However, the Court of Civil Appeals found that the respondent was holding such property for the benefit of Myla Baker and Earl M. Baker, the latter having succeeded to the rights of T. B. Baker. There is no complaint about this finding, and as we view the matter it becomes immaterial.

"At any rate, some time prior to December, 1938, the parties began negotiations for a settlement or partition of the respective rights of Myla Baker and Earl M. Baker in the assets of the estate. An instrument dated December 1, 1938, was prepared for the parties to sign. This paper included, among other divisions of the property, a stipulation that Earl M. Baker was to receive ⅓, and Myla Baker ⅔, of the stock of the Gunter Hotel Corporation. The petitioner signed the instrument as prepared but respondent refused to do so because it included the division of the Gunter

stock. At that time the stock was held by and in the name of Earl M. Baker and other co-trustees for the benefit of a creditor of the corporation, the Gunter Hotel being heavily incumbered. A few days later negotiations were reopened by the parties through their attorneys, which culminated in the preparation in writing of another settlement or partition agreement dated December 9, 1938, but which was not executed until December 11, 1938, when the parties and their attorneys met in Fort Worth for the purpose of making a settlement. By consent of the parties no provision was included in the latter instrument with reference to the stock of the Gunter Hotel Corporation. The petitioner introduced evidence to the effect that at the time the second instrument was executed respondent orally promised to deliver ⅔ of such stock but requested that no mention be made of it in the written agreement because it was then held in trust as aforesaid and he was not in position to procure or deliver it. This evidence was strongly controverted by respondent. The partition agreement was executed by respondent and his wife, Gladys Whorton Baker, as parties of the first part, and petitioner as party of the second part. It was therein agreed that on or before December 19, 1938, first parties would convey to second party all or portions of certain holdings in real estate in various counties in Texas, an undivided ½ interest in the minerals of 40 acres of land in Aransas County, and all of the grantors' interest in WFAA radio stock. The petitioner in turn agreed to convey to respondent and his wife the Crystal Plant in Mineral Wells, the Piedmont Hotel property in Mineral Wells, and 8100 shares of stock in the Resort Hotel Company, owner of the Baker Hotel in Mineral Wells. The Piedmont Hotel property consisted merely of the right of petitioner to purchase such hotel under a contract with the City National Bank of Mineral Wells, which right had theretofore been transferred by written assignment from petitioner to the Resort Hotel Company. About 70 per cent of the stock of the latter company was owned by respondent and about 10 per cent thereof by petitioner. At the time of the execution of the partition agreement petitioner possessed

no interest in the Piedmont Hotel property except such as she might have claimed indirectly as owner of the 8100 shares of stock in her assignee, the Resort Hotel Company, and thus the transfer of this stock to respondent, which was all she owned, carried with it all her interest in the Resort Hotel Company, including her remote interest in the Piedmont Hotel property.

"Simultaneously with the execution of the partition agreement the parties executed fifteen conveyances or agreements, which included all the property mentioned in the partition agreement except the Piedmont Hotel property, the WFAA stock, and the 8100 shares of stock in the Resort Hotel Company. Since petitioner had divested herself of all her interest in the Piedmont Hotel property, as above stated, no further executions were necessary with reference to it. The WFAA stock and the 8100 shares in the Resort Hotel Company were transferred by written endorsement. Also, as a part of the settlement, respondent surrendered to petitioner 2230 shares of stock in the Citizens Hotel Company, which stock was not specifically mentioned in any of the written instruments. It was in petitioner's name and belonged to her, but had been held by respondent as collateral security for petitioner's overdraft of her account at the Baker Hotel in Mineral Wells.

"The fifteen collateral instruments also embraced five distinct matters which were not mentioned in the general partition agreement. Such obligations were as follows: (1) A trust agreement promising payment of $9,000 per year to petitioner for the remainder of her life and pledging 64,000 shares of stock of the Resort Hotel Company to guarantee its payment; (2) a stipulation authorizing payment of the $9,-000 in monthly installments of $750 each; (3) an agreement with warranty to furnish petitioner an apartment in the Baker Hotel at Mineral Wells for the remainder of her life, together with her meals, laundry and maid service without cost to her; (4) an assignment of a ⅔ interest in the unpaid balance of a note given by Edson Realty Company and Wilson Holding Company in the sum of $8,000; and (5) a mutual agreement between the parties insuring correct description of the lands conveyed to each other.

"Also, contemporaneously with the execution of the several instruments above enumerated, the parties executed a mutual release which furnishes the chief background for the present controversy. The provisions of this release which are here material are as follows:

" 'Whereas, on the 9th day of December, 1938, a contract was entered into by and between Earl M. Baker and Gladys Whorton Baker, as first party, and Myla Baker, as second party, for the purpose of exchanging certain properties therein mentioned and executing conveyances thereto, respectively; and,

" 'Whereas, it is contemplated by all of the parties hereto that when the terms of said contract are complied with that it shall constitute a full, final, and complete release, each to the other, respectively, from all claims, demands, choses in action, suit, or other right of action of every character and description, whether enumerated herein or not, save and except the rights and benefits accruing to Myla Baker under a certain trust agreement executed by Earl M. Baker, December 10, 1938.

" 'Now, therefore, in consideration of the foregoing premises, and the respective rights and benefits passing to each of said parties, respectively, under the terms of said contract, we enter into the following release agreement:

" 'I. I, Myla Baker, do hereby release Earl M. Baker and Gladys Whorton Baker from any and all claims, demands, choses in action, or other right of action of every character and description, past, present, and future, real or fancied, whether the same be enumerated herein or not, growing out of any trade, deal, joint adventure, partnership or other character of dealing, business or otherwise (except as to my rights to the properties mentioned in said contract and my right as beneficiary under said trust agreement), and by these presents do acknowledge full, final, and complete settlement and payment in full thereof, and that I have no right, title, interest, or claim to any property, personal or real, now in the name of Earl M. Baker and/or Gladys Whorton Baker.'

"The above stipulations were followed in the same instrument by a similar release from respondent and his wife to petitioner.

"All the written instruments were executed on December 11, 1938, in the office of petitioner's attorney in Ft. Worth. The instruments were thereupon delivered to the attorneys for the respective parties. It is the contention of petitioner that the mutual release was conditionally executed and delivered to respondent's attorney subject to a contemporaneous oral agreement that the transaction was not to be complete, and the release was not to be recorded or to take effect, until respondent performed his oral promise to deliver to petitioner 2/3 of the stock of the Gunter Hotel Corporation. The evidence was sharply controverted as to the existence of the oral agreement and as to the conditional execution and delivery of the release, but such fact issues were resolved in favor of the petitioner.

"Within a few weeks after the instruments were executed respondent secured a release of the Gunter stock from the mortgage company and was then in position to deliver 2/3 thereof to petitioner, but refused to do so, which conduct precipitated the filing of this suit.

"The material allegations of petitioner set forth substantially the same facts above outlined, including the oral agreement for the delivery of the Gunter stock, and sought judgment for 2/3 of the stock of the Gunter Hotel Corporation, asking that the release be reformed so as to speak the true agreement or that the same be set aside. In the alternative she asked for damages for the value of the stock.

"In the trial court the jury made the following findings: (1) That on December 10, 1938, respondent orally agreed to subsequently deliver 2/3 of the Gunter stock to petitioner; (2) that respondent did not at that time in good faith intend to perform such agreement; (3) that petitioner, in signing the instruments, was induced to do so by the agreement of respondent to deliver such stock; and (4) that on the occasion of signing the instruments it was agreed by the respective attorneys of petitioner and respondent that the release signed by petitioner would not become ef-

fective until the Gunter stock was delivered to her. Upon such verdict the trial court rendered judgment that petitioner recover title to and delivery of 2/3 of the stock of the Gunter Hotel Corporation and that respondent be compelled to transfer the stock to her. There was no order in the judgment reforming or cancelling the release. It is the position of petitioner that such release should become effective after the delivery of the stock and thus a reformation or cancellation becomes unnecessary."

The present record differs from the former record in two particulars: (1) The record now conclusively shows that the "receipt or acquittance" was not delivered subject to a contemporaneous oral agreement that the release was not to take effect until Earl Baker delivered to Myla Baker two-thirds of the stock of the Gunter Hotel Corporation. (2) Appellant's petition contained an additional alternative ground for recovery to the effect that a valid, subsisting and binding contract existed between her and appellee, under the written terms of which she was to receive from appellee two-thirds of the stock of the Gunter Hotel Corporation; that she was thereafter induced by appellee's fraud to modify such agreement so as to delete written reference to said stock, but not to discharge his obligation to deliver same; that the modification was unenforcible for fraud and lack or failure of consideration, and the original contract consequently is in full force and effect. Appellant further alleged that appellee by reason of the fraud he perpetrated upon her, is estopped to contest her right to the stock. The written contract referred to is the written contract dated December 1, 1938, which was signed by Myla Baker but never signed by Earl Baker.

Appellant's first contention is that the written instrument dated December 1, 1938, signed by Myla Baker and not signed by Earl Baker, covering the mutual exchange of properties between the parties, which included the provision that appellant should receive and own two-thirds of the stock in the Gunter Hotel Corporation, was a valid, subsisting and binding contract between the parties, because it was signed by Myla Baker, delivered to Earl Baker and accepted by him, although he did not sign it.

The evidence shows that after the attorneys for the respective parties had prepared this instrument of December 1, 1938, in Fort Worth, Texas, it was agreed between them that Sam R. Sayers, Esq., attorney for Myla Baker, should drive to Mineral Wells and secure her signature to the same and upon his return to Fort Worth Earl Baker would sign this contract. Mr. Sayers went to Mineral Wells and secured Myla Baker's signature to several copies of the contract and returned to Fort Worth, where he was informed by Earl Baker's attorneys, Franklin P. Canaday and Sam G. Croom, Esquires, that Earl had refused to sign the document and had taken his departure for San Antonio. Mr. Sayers then delivered one or more copies of the instrument, signed by plaintiff, to defendant's attorneys and the same remained in the possession of the defendant or his attorneys and were never returned. One copy was retained by Mr. Sayers. On December 4, 1938, Franklin P. Canaday, Esq., attorney for Earl Baker, called Mr. Sayers over the telephone in Fort Worth. Canaday told Sayers, among other things, that "we want to go forward with that contract and negotiations and settle this matter up." Canaday also told him that they wanted to come to Fort Worth, and Sayers told Canaday that there wasn't any use in their coming unless Earl was going to sign that contract, and thereupon he was informed that Earl would sign. Earl was then put on the telephone and confirmed the conversation by a statement that the contract was all right and that he would sign it. This led to the negotiations which began on December 9, 1938.

■ We cannot agree that the above facts show a completed written contract between the parties. It is shown that it was contemplated that Earl Baker would sign the contract to make it effective. This he refused to do and this fact was well known to Sayers. Sayers said that he did not intend that Myla Baker should be bound by the contract unless Earl Baker signed it. He told Canaday over the phone that it would be absolutely necessary for Earl Baker to sign the contract before they could go ahead with the settlement and that there

was no use wasting their time unless Earl was going to sign the contract.

Art. 3995, Vernon's Ann.Civ.Stats., requires that a contract for the sale of land to be enforcible must be in writing and signed by the party to be charged. It is to be presumed that Sayers, as an attorney, knew that before Earl Baker would be bound by this contract which called for the transfer of land, it would not only be required to be in writing but signed by the party to be charged. It was no doubt for this reason that he stated it would be necessary for Earl to sign the contract.

■ Furthermore, regardless of the intentions of the parties, the contract was one relating to the sale of land and is not enforcible against Earl Baker because not signed by him. Clegg v. Brannan, 111 Tex. 367, 234 S.W. 1076.

■ Another reason the contract of December 1, 1938, is not a binding contract is that it is too vague, indefinite and incomplete in its terms. To illustrate, it provides:

"I.

"Earl Baker shall receive and own:

&ast; &ast; &ast; &ast; &ast; &ast;

"7. ⅓ of all stock in Gunter Hotel, subject to agreement to be prepared by attorneys, including option to buy in respective parties.

&ast; &ast; &ast; &ast; &ast; &ast;

"II.

"Myla Baker shall receive and own:

&ast; &ast; &ast; &ast; &ast; &ast;

"3. ⅔ of the stock in Gunter Hotel, subject to escrow agreement, option to purchase, and management contract.

&ast; &ast; &ast; &ast; &ast; &ast;

"VIII.

"It is mutually agreed by the parties hereto that it is contemplated that other instruments, including the Trust Agreement mentioned herein, deeds of conveyances, acquittances, releases, and contract with reference to management of Gunter Hotel, in fact such other instruments as will be necessary to the final fulfillment of this agreement shall be executed, and where performance herein is designated as of 'this

date', the actual commencement of performance shall be simultaneous with the execution of the contemplated instruments in this paragraph mentioned."

It is clear that the contract contemplated the execution of an escrow agreement, an option to purchase, and a management contract, but gives no intimation as to the provisions of such agreements or contracts. There is nothing to indicate at what price the stock could be purchased, or for what length of time the option was to endure, or how the option could be exercised. "An agreement to be finally settled must comprise all the terms which the parties intend to introduce into the agreement. An agreement to enter into an agreement upon terms to be afterward settled between the parties, is a contradiction in terms. It is absurd to say that a man enters into an agreement until the terms of the agreement are settled." Ridgway v. Wharton, 6 H.L. Cases 238; 10 English Reprint, 1287.

See Butler v. Kemmerer, 218 Pa. 242, 67 A. 332; Weegham v. Killefer, D.C., 215 F. 168 (same case), 6 Cir., 215 F. 289, L.R.A. 1915A, 820; Mayer v. McCreery, 119 N.Y. 434, 23 N.E. 1045; Wardell v. Williams, 62 Mich. 50, 28 N.W. 796, 4 Am.St.Rep. 814; Sun Printing Co. v. Remington Paper Co., 235 N.Y. 338, 139 N.E. 470.

In Scholtz v. Northwestern Life Insurance Co., 8 Cir., 100 F. 573, 574, the court said: "It may be conceded that an agreement to enter into a lease will neither be enforced in equity nor at law if it appears from the face of the agreement that any of the terms of the lease, no matter how unimportant they may seem to be, are left open to be settled by future conferences between the lessor and lessee. In such cases there is no complete agreement; the minds of the parties have not fully met; and, until they have, no court will undertake to give effect to those stipulations that have been settled, or to make an agreement for the parties respecting those matters that have been left unsettled."

In Shepard v. Carpenter, 54 Minn. 153, 55 N.W. 906, there was a contract for the cutting and hauling of logs, containing a provision that, "the amount of timber or logs to be cut in any one year shall be agreed upon." This was held to be invalid, the Court saying: "An agreement to enter into negotiations, and agree upon the terms of a contract, if they can, cannot be made the basis of a cause of action. There would be no way by which the court could determine what sort of a contract the negotiations would result in; no rule by which the court could ascertain whether any, or, if so, what damages might follow a refusal to enter into such future contract."

It is perfectly plain that if the court should enforce the contract of December 1, 1938, and, in keeping with its terms, award two-thirds of the stock in the Gunter Hotel Corporation to Myla Baker, then what kind of an escrow agreement would it decree and what would be the terms of the option to purchase? The mere asking of this question demonstrates that the contract is incomplete and unenforcible.

Appellant contends that the various conveyances and instruments executed and delivered to the parties, respectively, on December 11, 1938, were acts of performance referrable to the contract of December 1, 1938, and that all provisions were carried out except the transfer of two-thirds of the Gunter Hotel Corporation stock. If this be regarded as true even then appellant could not recover because the executory contract having been carried into effect by the execution of conveyances, then the doctrine of merger would apply and the executory contract passes out of consideration and the rights of the parties are exclusively defined by the provisions of the various instruments and conveyances they have executed and accepted under the executory contract. "Merger of contract to convey in deed.—The rule applicable to all contracts, that prior stipulations are merged in the final and formal contract executed by the parties, applies, of course, to a deed based upon a contract to convey. When a deed is delivered and accepted as performance of a contract to convey, the contract is merged in the deed. Though the terms of the deed may vary from those contained in the contract, still the deed must be looked to alone to determine the rights of the parties. 'No rule of law is better settled than that where a deed has

been executed and accepted as performance of an executory contract to convey real estate, the contract is functus officio, and the rights of the parties rest thereafter solely in the deed.'" Devlin, Law of Deeds, Vol. 2, § 850a.

Mr. Williston in his work on Contracts (Rev.Ed.) Vol. III, Sec. 723, says: "Whether the purchaser by accepting a deed conveying an inadequate title thereby assents to taking the deed as a full satisfaction of the vendor's obligation is another matter; but, unlike the rule in regard to personalty, there is here as a matter of law a discharge of the purchaser's right in regard to property which the deeds were forced to convey. The deed merges the contract, and the purchaser has no redress except such as afforded in the covenants in the deed, unless fraud or mistake enable him to rescind the transfer or to have the deed reformed. If the parties so agree there seems no difficulty of consideration even though the deed conveys something which is necessarily less than was contracted for."

Restatement of Contracts, Vol. 2, Sec. 413, thus states the rule: "The acceptance of a deed of conveyance of land from one who has previously contracted to sell it, discharges the contractual duties of the seller to the party so accepting except such as are embodied in the deed or are within the rule stated in Sec. 240(1b)."

In Wells v. Burroughs, Tex.Civ.App., 65 S.W.2d 396, 397, the Court said: "All contracts prior to the execution of the deed are presumed to have been merged in the deed, which expresses all the agreements of the parties. Harper v. Town & Improvement Co., Tex.Com.App., 228 S.W. 188; Eldora Oil Co. v. Thompson, Tex. Com.App., 244 S.W. 505. Hence the plaintiffs would be presumed to have absolutely conveyed the land just as the deed declares.

(2) If the representations and promises to erect a gin were made for the purpose of defrauding and deceiving and without any intention at the time made of performing same, yet the plaintiffs lost the remedy of rescission by acts constituting a waiver. 7 Tex.Jur. § 37, p. 943; § 39, p. 947; § 24, p. 921."

We overrule appellant's contention that the alleged contract dated December 1, 1938, and not signed by Earl Baker, was a valid, subsisting and binding contract existing between her and the defendant. Thus appellant failed to make out a case under her alternative grounds of recovery.

■ Appellant has filed a supplemental brief in which she contends that she should recover upon the oral contract to deliver two-thirds of the stock of the Gunter Hotel Corporation made in connection with the negotiations which took place on December 9, 10 and 11, 1938. We think this question has already been definitely decided against appellant on the first appeal by both this Court and the Supreme Court and is now the law of the case.

It will be recalled that on the first trial appellant secured a jury finding that such an oral agreement was made and this Court held that there was sufficient evidence to support that jury finding. It was contended then that appellant should be permitted to recover on this finding irrespective of whether the "receipt or acquittance" was conditionally delivered or not. We necessarily overruled this contention when we remanded the cause to the trial court for a new trial (188 S.W.2d 733). The Supreme Court necessarily approved this action when they dismissed the application for a writ of error, filed after our second opinion.

The judgment of the trial court is affirmed.