# IN THE SUPREME COURT OF TEXAS

═══════════

No. 14-0346

═══════════

BARBARA D. COSGROVE, INDIVIDUALLY AND AS THE TRUSTEE OF THE CHARLES AND
BARBARA COSGROVE FAMILY REVOCABLE LIVING TRUST, PETITIONER

v.

MICHAEL CADE AND BILLIE CADE, RESPONDENTS

═══════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS

═══════════

JUSTICE BOYD, joined by JUSTICE JOHNSON, JUSTICE GUZMAN, and JUSTICE DEVINE, dissenting in part.

"This deed-reformation dispute . . . ." *Ante* at ___.

These first four words of the Court's opinion foretell and ensure its erroneous result. This case does involve a deed-reformation dispute, and I agree with the Court's holdings as to that dispute: because the law charges the Cades with knowledge of the deed they signed, the discovery rule does not apply and the statute of limitations bars the Cades' equitable claim to reform the deed. But as the Court curtly acknowledges at the close of its opinion, this case involves other claims, including a claim for breach of a separate contractual agreement the parties signed at closing. I do not agree that the statute of limitations bars the Cades' claim for breach of the separate

closing agreement, because that claim accrued only two months before the Cades filed this suit. As to that part of the Court's judgment, I respectfully dissent.

**I.**
**Background**

In September 2006, the parties entered into a real estate sales contract in which they agreed that the Cades would sell their home and two-acre lot to the Cosgroves[1] but retain the mineral interests, which they had previously leased to an oil company. At the closing the following month, the Cades signed and delivered a deed that failed to reserve the mineral interests, contrary to the terms of the sales agreement. Ms. Cosgrove has never disputed that this was a mistake. At the same closing, however, the parties also signed a separate closing agreement in which they mutually promised to "comply with all provisions of the [sales] contract" and to "fully cooperate, adjust, and correct any errors or omissions and to execute any and all documents needed or necessary to comply with all provisions of the above mentioned [sales] contract."

During the four years following the closing, the lease operator continued to send shut-in royalties and notices to the Cades, as if they still owned the mineral interests. The evidence conclusively establishes, and Ms. Cosgrove does not dispute, that neither the Cades nor the lease operator had actual knowledge that the deed had mistakenly failed to reserve the mineral interests. It is not clear when Ms. Cosgrove discovered the mistake, but within weeks after the four-year anniversary of the closing, she contacted the operator, asserted ownership over the minerals, and demanded that the operator pay all royalties to her. In December 2010, days after the operator

---

[1] Although the Cosgroves purchased the property through their family revocable living trust, I refer to them personally, rather than to the trust, for clarity's sake. I refer individually to Ms. Cosgrove when addressing post-closing events because Mr. Cosgrove died after the closing and before the Cades filed this suit.

informed the Cades of Ms. Cosgrove's demand, the Cades asked Ms. Cosgrove to fulfill the promises she made in the closing agreement, but she refused. Two months later, in February 2011, the Cades filed this suit, asserting claims for declaratory judgment (which the Court construes as "in effect a suit to reform the deed," *ante* at ___), tortious interference, statutory theft, and breach of the closing agreement.

The trial court granted Ms. Cosgrove's motion for summary judgment and denied the Cades' cross-motion, finding that the statute of limitations barred all of the Cades' claims. The court of appeals unanimously reversed and remanded. 430 S.W.3d 488. In that court's only opinion accompanying its judgment,[2] Justice Dauphinot concluded that fact issues precluded summary judgment for either party. Addressing the Cades' breach-of-contract claim, Justice Dauphinot explained that "[t]here is no allegation that Cosgrove breached any contract other than the closing agreement, in which she agreed to cooperate in correcting any errors in any documents executed in connection with the transaction." *Id.* at 506–07. She concluded that Ms. Cosgrove's alleged breach of the closing agreement occurred when she refused the Cades' request to correct the mistaken deed, two months before they filed this suit, and the claim "was therefore brought within the limitations period." *Id.* at 507. Justice Dauphinot thus concluded that Ms. Cosgrove was not entitled to summary judgment on the contract claim. But she concluded that the Cades were not entitled to summary judgment on that claim either, because a "correction deed may be used only to correct facial imperfections," and the omission of a reservation of mineral interest is more than

---

[2] Justices Walker and Gabriel concurred "without opinion." 430 S.W.3d at 508.

a facial imperfection. *Id.* at 507–08 (citing *Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 750 (Tex. 2009)).[3]

## II.
## The Equitable Deed-Reformation Claim

The Court holds today that limitations bars the Cades' deed-reformation claim, and I agree. Although the parties agreed in their sales contract that the Cades would retain the mineral interests, they effectuated that agreement by approving and signing a deed that did not retain those interests. As we have long recognized, "[w]hen a deed is delivered and accepted as performance of a contract to convey, the contract is merged in the deed. Though the terms of the deed may vary from those contained in the contract, still the deed must be looked to alone to determine the rights of the parties." *Alvarado v. Bolton*, 749 S.W.2d 47, 48 (Tex. 1988) (quoting *Baker v. Baker*, 207 S.W.2d 244, 249 (Tex. Civ. App.—San Antonio 1947, writ ref'd n.r.e.)). Under the merger doctrine, the Cades conveyed the mineral interests to the Cosgroves, and they cannot rely on the terms of the sales contract to undo that conveyance.

They can rely, however, on principles of equity. "Despite the merger doctrine, prior agreements are not merged into a realty deed [that] is signed due to fraud, accident, or mistake." *Geodyne Energy Income Prod. P'ship I-E v. Newton Corp.*, 161 S.W.3d 482, 487 (Tex. 2005). In equity, Texas law would allow the Cades to sue to reform the deed based on mutual mistake, but they must bring that claim within the four-year statute of limitations. For the reasons the Court

___

[3] The Cades do not contest Justice Dauphinot's conclusion that a correction deed is unavailable as a remedy in these circumstances, so we need not address that issue. Justice Dauphinot did not, however, affirm the summary judgment in Ms. Cosgrove's favor on that ground, but instead suggested that the Cades may be entitled on remand to a different form of relief, such as a judgment requiring Ms. Cosgrove "to execute a new instrument conveying the mineral back to them." 430 S.W.3d at 508.

explains, I agree that the law charges the Cades with knowledge of the deed's contents as of the date they signed it, so they cannot rely on the discovery rule to toll the statute of limitations, which expired before they filed suit to reform the deed in February 2011. *See Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 425 (Tex. 2015) (per curiam) (holding that "the law presumes that [a] party knows and accepts" the terms of a contract the party signs, and "it is not the courts' role 'to protect parties from their own agreements'") (quoting *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 810–11 (Tex. 2012)). As with laches, the "fundamental premise" of limitations is simple: "If you snooze, you lose." *Am. Int'l Grp., Inc. v. Am. Int'l Bank*, 926 F.2d 829, 835 (9th Cir. 1991) (Kozinski, J., dissenting).

### III.
### The Breach-of-Contract Claim

Another premise, however, is equally fundamental here: "what's good for the goose is good for the gander." *In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 480 (Tex. 2011) (Willett, J., concurring in part and dissenting in part). Just as the law must charge the Cades with knowledge of the deed's contents and hold them to it, the law must charge Ms. Cosgrove with knowledge of the closing agreement's contents and hold her to the promise she made to correct any errors or omissions in the deed. The Court, however, concludes that the four-year statute of limitations bars the Cades' separate claim for breach of that promise. *Ante* at __. I read the Court's opinion to assert four reasons for this conclusion: (A) the Cades have no "superior right" to the mineral interests; (B) the claim accrued when the Cades signed the deed at closing; (C) the Cades waited too long to ask Ms. Cosgrove to correct the error; and (D) in light of "the need for stability and certainty" regarding real property titles, the law cannot permit the Cades to "circumvent" limitations against the Cades' equity claim by asserting a breach-of-contract claim. I disagree with all four reasons.

5

## A. "Superior right" to the Mineral Interests

The Court begins its very brief discussion of the Cades' "remaining claims" with the conclusory and unsupported assertion that these claims "would be available only if [the Cades] could reform the deed and prove superior right, which they cannot." *Ante* at ___. To the extent the Court refers here to the Cades' claims for tortious interference and statutory theft, I agree that those claims must fail. A claim for tortious interference requires "an existing contract subject to interference," *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000), and a claim under the Texas Theft Liability Act arises only if the defendant unlawfully appropriates property "with intent to deprive the owner" or "another person [who] has the right of exclusive possession of the property," TEX. CIV. PRAC. & REM. CODE § 134.003 (creating civil claim for "theft"); TEX. PENAL CODE §§ 31.03, 31.10 (defining "theft"). The Cades could prevail on these claims only if they "could prove superior right [to the mineral interests], which they cannot," *ante* at ___, because Ms. Cosgrove legally owned the mineral interests when she asserted her right to receive royalties.

The lack of a superior right to the mineral interests, however, has no effect on the Cades' claim for breach of the closing agreement. The fact that Ms. Cosgrove "owns fee simple title, and the opportunity for an equitable remedy, expired with limitations," *ante* at ___, does not undermine the Cades' breach-of-contract claim—it is the very basis for the claim. It is because the deed erroneously conveyed the mineral interests to the Cosgroves, contrary to the terms of the sales contract, that Ms. Cosgrove had an obligation under the closing agreement to "execute any and all documents needed or necessary to" correct that error. And it is because Ms. Cosgrove refused, in December 2010, to comply with that obligation that the Cades have a breach-of-contract claim

against her. The Court sets up a catch-22: the Cades cannot enforce Ms. Cosgrove's promise to correct an error in the deed unless they first prove that there is no error in the deed. And to the extent the Cades sought "an equitable remedy" on their breach-of-contract claim, the Court's assertion that their opportunity for that remedy "expired with limitations" confuses the deed-reformation claim with the breach-of-contract claim. Whether the Cades may be entitled to equitable relief or only breach-of-contract damages or neither is irrelevant to the sole basis on which Ms. Cosgrove sought summary judgment: the statute of limitations.

## B.     Accrual of the Breach-of-Contract Claim

The Court concedes that "[a] claim for breach of contract accrues when the contract is breached." *Ante* at ___ (citing *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002)). It then proceeds to completely ignore that truth and never once addresses the question of when Ms. Cosgrove breached the closing agreement. Instead, in the very next sentence, the Court concludes that "[t]he Cades's breach of contract claim accrued when the deed was executed," without making any effort to explain how the execution of the deed could constitute or cause a breach of the closing agreement. *Id.* I respectfully disagree.

"Causes of action accrue and statutes of limitations begin to run when facts come into existence that authorize a claimant to seek a judicial remedy." *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 202 (Tex. 2011). Through their breach-of-contract claim, the Cades seek a judicial remedy not for the mistakenly executed deed but for Ms. Cosgrove's breach of her promise to execute documents needed to correct errors and effectuate the provisions of the sales agreement, particularly the provision in which the parties agreed the Cades would reserve the mineral interests. "[A] breach of contract claim accrues when the contract is breached," *Stine*, 80

7

S.W.3d at 592, and "'[b]reach' of a contract occurs when a party fails to perform an act that it has contractually promised to perform." *Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 765 (Tex. 2014). Here, Ms. Cosgrove did not—indeed, she could not—fail to perform her promise to correct the erroneous deed until after the Cades requested that she do so, just months before the Cades filed this suit. *See Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 211 (Tex. 1999) (holding that party "did not breach its agreement to indemnify [contractor] until [contractor] made a demand for indemnity, and [party] refused to perform," and "[i]t was only at this time that the statute of limitations began to run"); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Crocker*, 246 S.W.3d 603, 609 (Tex. 2008) (concluding insurer had no duty to defend until insured notified insurer that he had been served with process and expected insurer to answer on his behalf).

I agree with the Cades that Ms. Cosgrove's breach of contract occurred when she refused the Cades' request that she correct the errors and omissions as she had promised. The Court disagrees "because the Cades are charged with notice of the contents of their deed upon execution." *Ante* at ___. But the Court makes no effort to explain how the Cades' notice of the deed's contents equates to a breach of contract by Ms. Cosgrove. I agree that the law charges the Cades with knowledge of the deed's contents as of the date they signed it, but neither the deed nor its contents breached Ms. Cosgrove's separate promise to correct any omissions in the deed. That breach occurred when Ms. Cosgrove refused the Cades' request that she correct the errors, not when the Cades signed the deed. A breach-of-contract claim accrues when the contract is breached, *Greene*, 446 S.W.3d at 765, and the Cades' execution of the mistaken deed could not and did not cause or constitute Ms. Cosgrove's breach of the closing agreement.

8

The Court asserts that, because the Cades are charged with knowledge of the deed's contents, they had only two choices: "They could have declined to close the deal until the deed was corrected. Or they could have closed, demanded immediate correction, and then treated any refusal as a breach of contract." *Ante* at \_\_\_. Because they did neither, and instead "demanded . . . correction" four years later, the Court concludes that, "under either a contract theory or a deed-reformation theory, . . . the limitations period began to run at the execution of the deed." *Id.* As I discuss in the following section, the question of how quickly the Cades should have "demanded . . . correction" may raise a legitimate issue, but it is not an issue of limitations, nor one Ms. Cosgrove raises here. Ms. Cosgrove sought summary judgment on limitations, and as to that issue the controlling question is: "Where's the breach?" The Court makes no effort to address that question.

I thus disagree with the Court's assertion that, "[b]y the time the Cades asked Cosgrove to reform the deed, limitations had expired, and the Cades could claim no right to Cosgrove's property." *Ante* at \_\_\_. I agree that "limitations had expired" by then on the Cades' equitable deed-reformation claim, but it had not expired on their contract claim because that claim had not even accrued. It accrued later, when Ms. Cosgrove breached the contract by refusing to perform as she had promised.

**C.     Delayed Demand for Correction**

In light of the Court's failure to even consider when Ms. Cosgrove breached her promise and caused the Cades' breach-of-contract claim to accrue, it seems clear that what the Court is actually holding is that the Cades waited too long to request that Ms. Cosgrove correct the mistaken deed, not that they waited too long to sue her for refusing that request. The Court confirms this when it states that "[t]he question before us is how long the Cades may sit on their putative

contractual right *to request material changes* to an unambiguous deed on file in the courthouse." *Ante* at ___ (emphasis added); *see also ante* at ___ (asserting that "[a]llowing [the Cades] to slumber on this knowledge, for years or decades or generations, before *seeking a corrected deed* is not a luxury we have recognized") (emphasis added). By holding that limitations bars the Cades' breach-of-contract claim, however, the Court is confusing a contractual deadline (by which the Cades had to request performance) with a statutory limitations deadline (by which the Cades had to file a claim for Ms. Cosgrove's failure to perform in response to the Cades' request).

Perhaps the Cades did wait "too long" before asking Ms. Cosgrove to fulfill her promise to correct the deed. Or perhaps not. The parties have not argued that issue and the lower courts did not address it. The closing agreement does not provide a deadline by which the Cades had to ask Ms. Cosgrove to correct the deed's errors and omissions. The parties certainly could have agreed to such a deadline, but they did not. That does not necessarily mean that the Cades' right to request Ms. Cosgrove's performance was unlimited, or that they possessed "an open-ended breach of contract claim," as the Court bemoans. *Ante* at ___. "[I]t is quite elementary that where the contract is silent as to the time of performance, the law implies that a reasonable time is meant." *Tex. Farm Bureau Cotton Ass'n v. Stovall*, 253 S.W. 1101, 1106 (Tex. 1923); *see also Moore v. Dilworth*, 179 S.W.2d 940, 942 (Tex. 1944) ("Generally, where no time of performance is stated in a contract, the law will imply a reasonable time."). "What is a reasonable time depends undoubtedly upon the nature and character of the thing to be done, the circumstances of the particular case, and the difficulties surrounding and attending its accomplishment." *Hart v. Bullion*, 48 Tex. 278, 289 (1877).

Here, the Cades requested Ms. Cosgrove's performance almost immediately after they actually discovered the mistake in the deed, but the law charges them with knowledge of the deed's mistake as of the date they signed it, more than four years earlier. Perhaps the Court might hold that the contract includes an implied reasonable deadline, and perhaps it might hold that the Cades' four-year delay did not meet that implied deadline. That seems to be what the Court is in fact holding, but it is not what Ms. Cosgrove has argued, not what the trial court or court of appeals addressed, and not even what the Court says it is holding. Instead, the Court says it is holding that the Cades failed to meet a statutory limitations deadline because their breach-of-contract claim accrued when they signed the deed, even though Ms. Cosgrove did not breach the contract until more than four years later. The question of whether the Cades met an implied contractual deadline to ask for Ms. Cosgrove's performance is different than whether they met a statutory limitations deadline to sue for her refusal to perform as asked. If this Court desires to address the implied contractual deadline, we should at least allow the parties to raise and argue it first. And more importantly, we should actually address it, rather than confuse it with the limitations issue and thereby provide the wrong answer to the question the parties actually raise.

## D.   Equity, "Stability," and "Certainty"

Finally, the Court's primary reason for holding that limitations bars the Cades' contract claim appears to be its view that "[t]he Cades cannot circumvent the inapplicability of the discovery rule (and indefinitely toll limitations until the Cades demand a correction deed) simply by recasting their deed-reformation claim as a breach-of-contract claim." *Ante* at ___. "To hold otherwise," the Court asserts, "would circumvent the statute of limitations by allowing an open-ended breach of contract claim" and

11

> would defy all that we hold today regarding (1) the inapplicability of the discovery rule to suits involving obvious omissions from the face of a deed, (2) the duty on the mineral interest owner to exercise diligence with regard to the contents of his own mineral interest, (3) the need for stability and certainty in deed records, and (4) our construction of section 13.002 as applying to the contents of deeds.

*Ante* at \_\_\_. In light of these concerns, the Court chooses to disregard our well-established rules that govern the application of limitations to a claim for breach-of-contract. Although I share some of the Court's concerns, I do not agree that they justify the Court's holding here, for at least three reasons: (1) the closing agreement creates independent obligations unaffected by the deed; (2) equitable principles and duties do not trump the parties' contractual agreements; and (3) the Cades can obtain relief without undermining the stability and certainty of the deed records.

### 1.    Independent Obligations

To justify its holding, the Court variously characterizes the closing agreement as merely a "form prepared by [a] title company," *ante* at \_\_\_, as "not just any contract, but one concerning a deed," *ante* at \_\_\_, and as "part of a single, routine real estate closing," *ante* at \_\_\_. According to the Court, the fact that the Cades rely on such an agreement does not "change[] the limitations period, [because] the statute of limitations is four years for equitable reformation and four years for breach of contract." *Ante* at \_\_\_. There are at least three obvious and fundamental problems with this analysis.

First, the fact that the closing agreement was a "form prepared by [a] title company" is completely irrelevant to issues in this case. Perhaps that fact would matter if Ms. Cosgrove were arguing over the meaning of the agreement's terms. *See, e.g.*, *Epps v. Fowler*, 351 S.W.3d 862, 866 (Tex. 2011) (looking to how other courts construe a "legal-usage term within a form contract"); *Progressive Cnty. Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 553 (Tex. 2003) (explaining

that, in construing a standard-form insurance policy, we make "an effort to determine the ordinary lay meaning of the words to the general public"); *Ins. Co. of N. Am. v. Cash*, 475 S.W.2d 912, 915 (Tex. 1971) ("Printed form contracts are to be construed most strongly against the insurer."). It might also matter if she were contending that the agreement was unconscionable or otherwise unenforceable. *See, e.g.*, *Cate v. Dover Corp.*, 790 S.W.2d 559, 562 (Tex. 1990) (addressing whether inconspicuous disclaimer of implied warranty in form contract was unconscionable). But Ms. Cosgrove has raised no such arguments, nor does the Court purport to base its holding on them. Form agreement or not, Ms. Cosgrove signed the closing agreement, is charged with knowledge of its contents, and is bound by its provisions. And contrary to the Court's suggestion, a claim for its breach accrues when the breach occurs, just as with any other contract.

Second, the Cades are not trying to "change[] the limitations period" applicable to their breach-of-contract claim. *Ante* at ___. They agree that their equitable deed-reformation claim and their breach-of-contract claim are both subject to a four-year limitations period. The issue is not the length of the applicable limitations period but the date on which that period began. The Court is at best incorrect to assert that we "simply disagree" on "whether relying on a . . . closing document that was part of a single, real estate closing changes the limitations period." *Ante* at ___. We don't disagree on that at all. What we disagree on is when that limitations period accrued, and the Court simply refuses to address that question.

And third, the fact that the closing agreement is a contract "concerning a deed" and was "part of a single, routine real estate closing" does not make it unenforceable or subject a claim for its enforcement to different limitations rules. Texas law has never recognized such a concerning-a-deed doctrine or part-of-a-sale doctrine. The closest I can find (and the only similar doctrine the

13

parties address) is the merger doctrine, which the Court acknowledges does not apply to the closing agreement at issue here. *Ante* at ___ ("We do not rely on the merger doctrine.").

The merger doctrine is worth considering here, however, because the reasons for its (conceded) inapplicability illustrate the Court's error in treating the closing agreement differently just because it is a contract "concerning a deed" and was "part of" a real estate sale. As I briefly mentioned above, "[w]hen a deed is delivered and accepted as performance of a contract to convey, the contract is merged in the deed." *Alvarado*, 749 S.W.2d at 48. Under this merger doctrine, if "the terms of the deed . . . vary from those contained in the contract, . . . the deed must be looked to alone to determine the rights of the parties." *Id.* Thus, for example, "[t]he merger doctrine prevents the admission of any warranties made in the prior earnest money contracts which are contradicted in the deed." *Id.* "[I]n the absence of fraud, accident or mistake, all prior agreements entered into between the parties are considered merged in the deed." *Commercial Bank, Unincorporated, of Mason, Tex. v. Satterwhite*, 413 S.W.2d 905, 909 (Tex. 1967) (citing *Barker v. Coastal Builders, Inc.*, 271 S.W.2d 798 (Tex. 1954)).

The merger doctrine applies, however, only to the parties' prior agreement regarding the conveyance of an interest in the land, and not to "other distinct and unperformed provisions" of the parties' contract. *Harris v. Rowe*, 593 S.W.2d 303, 307 (Tex. 1979). "A contract of sale which provides for the performance of acts other than the conveyance remains in full force and effect as to such other acts." *Id.* (citing *Sanchez v. Dickinson*, 551 S.W.2d 481 (Tex. Civ. App.—San Antonio 1977, no writ)). When the parties have agreed to rights and obligations that are "collateral to and independent of the conveyance, such as completion of construction or escrow agreements pending construction," those rights "survive[] a deed that is silent in respect to the construction or

14

escrow agreement." *Id.* We thus held in *Harris* that the parties' execution of an escrow agreement "contemporaneously with" their execution of a deed that "pertained only to the conveyance" itself "plainly shows" that the parties "did not intend to merge the conditions of the agreement into the deed." *Id.*

Here, contemporaneously with the parties' execution of the deed (and after their execution of the sales contract), the parties executed a closing agreement, mutually promising to "fully cooperate, adjust, and correct any errors or omissions and to execute any and all documents needed or necessary to comply with all provisions of the above mentioned [sales] contract." This agreement was distinct from the sales agreement and collateral to the conveyance itself. It was not, and could not be, performed by the parties' execution of the deed, because it obligated the parties to correct any errors or omissions, including those within the deed itself. As such, it was not merged into the deed, and instead stands alone as a separate and independent agreement. *See, e.g.*, *Sanchez*, 551 S.W.2d at 486 (holding that promise to confirm right of first refusal in deed was "distinct and unperformed" and thus did not merge into deed and "remains in full force and effect as to such other act until full performance thereof"); *Pleasant Grove Builders, Inc. v. Phillips*, 355 S.W.2d 818, 823 (Tex. Civ. App.—Dallas 1962, writ refused n.r.e.) (holding that sellers' agreement to furnish title policy was "a separate agreement, not superseded by the deed and properly not included in the deed").[4]

---

[4] The Second Restatement of Contracts rejects "the discredited concept of 'merger by deed'" by which "the contract duties of a seller of land are discharged by the buyer's mere acceptance of a non-conforming deed of conveyance." RESTATEMENT (SECOND) OF CONTRACTS § 275 cmt. a (1981). The First Restatement, which recognized the merger doctrine, also confirmed that it applies only to the conveyance agreement, and not to separate agreements related to the conveyance, providing the following illustration:

> A contracts to sell Blackacre to B, and as part of the same contract, contracts to build a partition fence between Blackacre and another tract of his land. A makes and B accepts a deed of Blackacre,

Because Ms. Cosgrove's promise to correct the error and omission was not merged into the deed, it remains as a separate and enforceable obligation. We cannot disregard that agreement or, as the Court does here, deem it as breached prior to its breach simply because it somehow "concern[ed] a deed" or was "part of" a real estate sale. As a separate agreement, it is independently enforceable, and a claim for its breach accrued only when the breach occurred.

### 2. Equity and Contract

The Court holds that the Cades "cannot circumvent the inapplicability of the discovery rule . . . simply by recasting their deed-reformation claim as a breach-of-contract claim." *Ante* at ___. In other words, because limitations bars the Cades' equity-based claim for deed-reformation, limitations must also bar their contract-based claim for Ms. Cosgrove's refusal to correct the errors. This holding ignores the important distinction we have recognized between contractual obligations and obligations under equitable principles. Under Texas law, the parties' contractual agreements control over the principles of equity. "We generally adhere to the maxim that 'equity follows the law,' which requires equitable doctrines to conform to contractual . . . mandates, not the other way around." *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 648 (Tex. 2007). Thus, "[w]here a valid contract prescribes particular remedies or imposes particular obligations, equity generally must yield unless the contract violates positive law or offends public policy." *Id.* at 648–49.[5]

---

in which nothing is said of the partition fence. A's contractual duty to build the fence is not discharged.

RESTATEMENT (FIRST) OF CONTRACTS § 413 illus. 2 (1932).

[5] *See also Gotham Ins. Co. v. Warren E & P, Inc.*, 455 S.W.3d 558, 560 (Tex. 2014) ("[B]ecause the insurance contract addresses the insured's conduct, we hold that the insurer cannot rely on its equity claims."); *Tex. Health Ins. Risk Pool v. Sigmundik*, 315 S.W.3d 12, 14 (Tex. 2010) ("[E]quitable doctrines conform to contractual and statutory mandates, not vice versa."); *Tex. Ass'n of Counties Cnty. Gov't Risk Mgmt. Pool v. Matagorda Cnty.*, 52 S.W.3d 128,

"This Court has 'long recognized a strong public policy in favor of preserving the freedom of contract.'" *Id.* at 649 (quoting *Lawrence v. CDB Servs., Inc.*, 44 S.W.3d 544, 553 (Tex. 2001)). A party's contractual rights and obligations arise from the language of the contract, not from principles of equity, and they "are not generally supplanted by court-fashioned equitable rules that might apply, as a default gap-filler, in the absence of a valid contract." *Id.* at 647. As we have repeatedly confirmed, "parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 129 (Tex. 2004).

I cannot join the Court's decision to disregard Ms. Cosgrove's contractual promises simply because the contract affords the Cades a remedy that equity does not provide. It is the very nature of contracts to impose duties that are different from or in addition to those that already exist under the law. Consistent with *Fortis Benefits*, I would enforce the closing agreement, into which Ms. Cosgrove freely and voluntarily entered, independent of the availability or unavailability of any equitable claims, subject only to defenses against the enforcement of that agreement. The defense Ms. Cosgrove raised was limitations, and that defense fails because the claim did not accrue until she breached her obligation two months before the Cades filed this suit.

### 3.  Stability and Certainty

Finally, the Court expresses a concern that allowing the Cades to enforce their contract would undermine the "need for stability and certainty regarding titles to real property." *Ante* at ___. This case does not implicate the Court's concern, however, because there is no evidence or

---

134–35 (Tex. 2000) (refusing to recognize equitable right to subrogation when insurance contract did not provide such right).

17

indication that Ms. Cosgrove has conveyed the mineral interests or that any third party has detrimentally relied on the deed that mistakenly conveyed the interest to Ms. Cosgrove. But even if this case implicated the Court's concern, the Cades could obtain relief from Ms. Cosgrove while still protecting the interests of any innocent bona fide purchaser or other third party. Even if the Cades could not obtain specific performance in the form of an order requiring Ms. Cosgrove to execute a correction deed, which in effect would retroactively nullify the original mistaken deed, they could seek an order requiring Ms. Cosgrove to convey the interest back to the Cades, to fulfill her promise to execute "any and all documents necessary to comply with all provisions of the . . . [sales] contract." And alternatively, they could seek damages instead of specific performance. *See* RESTATEMENT (FIRST) OF CONTRACTS § 363 (1932) ("If a plaintiff in good faith sues for specific enforcement, and that relief is denied, damages or restitution may be awarded in the same proceeding, subject to the rules applicable to those remedies."). Contrary to the Court's conclusion, permitting the Cades' breach-of-contract claim need not undermine "the need for stability and certainty in deed records." *Ante* at ___.

## IV.
## Conclusion

We have often confirmed that public policy requires courts to honor and enforce the terms of private agreements:

> [I]f there is one thing which more than another public policy requires it is that [people] of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts when entered into freely and voluntarily shall be held sacred and shall be enforced by Courts of justice. Therefore, you have this paramount public policy to consider—that you are not lightly to interfere with this freedom of contract.

*Wood Motor Co. v. Nebel*, 238 S.W.2d 181, 185 (Tex. 1951) (quoting *Printing & Numerical Registering Co. v. Sampson*, 19 L.R.Eq. 462, 465 (1875)). Here, the Cades signed a deed in which they mistakenly failed to reserve their mineral interests, but Ms. Cosgrove signed an agreement in which she promised to cooperate and correct that error. The law charges the Cades with knowledge of the deed they signed, but it also holds Ms. Cosgrove to the promise she made, and she did not breach that promise until shortly before the Cades filed this suit. I concur in the Court's decision to reverse and render judgment for Ms. Cosgrove on the Cades' equitable deed-reformation claim, but I respectfully dissent from the judgment on their breach-of-contract claim and would affirm the court of appeals' judgment remanding that claim to the trial court.

_____

Jeffrey S. Boyd
Justice

**Opinion delivered**: June 26, 2015